GARRETT HOLDING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9381. Promulgated November 28, 1947.

Edmund S. Kochersperger, Esq., for the petitioner.
Thomas R. Wickersham, Esq., for the respondent.

OPINION.

LeMire, *Judge*: The first question for decision is whether the petitioner was a personal holding company as defined in section 501 (a). The statute fixes certain requirements of (1) gross income and (2) stock ownership. It has been stipulated that the petitioner meets the stock ownership requirement. It is for us to determine whether at least 80 per cent of the petitioner's gross income during 1942 was personal holding company income.

The petitioner received personal holding company income from dividends in the amount of $74,985. The balance of the petitioner's income was derived from the operation of its farms. It had gross receipts from farming of $19,115.71, from which it subtracted $16,291.14 as cost of operations and reported a gross profit of $2,824.57. It reported a total income of $77,809.57. The petitioner's personal holding company income was more than 80 per cent of its total income thus reported, but less than 80 per cent [1] of its gross receipts.

The petitioner contends that in determining its gross income under section 501 (a) (1) the costs of its farm production should not be subtracted from its gross receipts; in short, that gross income means gross receipts. Such procedure appears to be followed in reporting the gross income of farmers for income tax purposes, whether on a cash or accrual basis. See section 29.22(a)–7 of Regulations 111. The petitioner argues that the same procedure should be applied in determining the gross income of farmers for personal holding company purposes. Its argument was fully discussed and rejected in *Woodside Acres, Inc.*, 46 B. T. A. 1124; affd., 134 Fed. (2d) 793. There we deducted the costs of production from the gross sales of dairy products in determining gross income for personal holding company purposes. The petitioner claims that in doing so we overlooked a hypothetical case given in House Report No. 704, 73d Cong., 2d sess. (1939–1 C. B. (Part 2), pp. 554, 573). In the hypothetical case an income "from rents" was included as an example of gross income. The petitioner

---

[1] Both parties have computed this ratio as 79.76 per cent. The subtraction of any one item of the petitioner's cost of operations would satisfy the gross income requirement under section 501 (a) (1).

argues that therefore gross income was intended by Congress to mean gross receipts. However, the illustration fails to show whether the assumed rental income was either a gross or a net amount. We think the example falls short of requiring a reconsideration of our opinion in the *Woodside* case. The petitioner next contends that we should distinguish that case because there the taxpayer was on an accrual basis (though no inventories were used), while here the petitioner was on a cash basis. It argues that the regulations, *supra*, make a distinction between the cash and accrual methods of reporting income. In the absence of inventories, we think that is a distinction without difference. Moreover, under the regulations the gross income of farmers is to be determined for income tax purposes on the basis of gross receipts in either case. We hold, on the authority of the *Woodside* case, that the petitioner was a personal holding company during 1942.

The next question for decision is whether the application of the personal holding company surtax to the petitioner is constitutional. Section 504(b) allows a deduction for the payment of indebtedness incurred prior to January 1, 1934, in computing the distributable net income of a personal holding company. None is allowed for the payment of indebtedness incurred after January 1, 1934. The petitioner argues that the denial of a deduction for the payment of indebtedness incurred after January 1, 1934, "causes either of two results: (1) The attempt by Congress to declare that such a company never can extricate itself from a debtor status; and (2) the imposition of taxes upon capital if such a company does pay its debts (as this company did)." This argument is not supported by any cited authorities and is contrary to the facts in this case. The petitioner had a surplus which exceeded the total amount of its indebtedness. It could have paid its debts from capital and it could have paid its surtax from income. Instead, the petitioner chose to pay some of its debts out of income, with the result that it would be required to pay some it its surtax out of capital. It does not follow that the surtax is, therefore, a tax on capital. Cf. *Morris Investment Corporation* v. *Commissioner,* 134 Fed. (2d) 774; certiorari denied, 320 U. S. 743. It is a tax on income. If there is no income, there is no surtax.

The Fifth Amendment is not violated by the selection of the January 1, 1934, dividing line. The personal holding company surtax first appeared in the Revenue Act of 1934. Section 351(b)(2)(B) of that act provided credit for pre-1934 indebtedness. Congress thereby intended to provide relief for corporations which then had outstanding bonds or other indebtedness payable from current earnings before distributions could be made. See S. Rept. 558, 73d Cong., 2d sess. (1939–1 C.B. (Part 2), pp. 586, 597). But the Act of 1934 served notice that

deductions would not be allowed for the payment of indebtedness incurred thereafter. The choice and effect of the dividing line were reasonable. Congress has also provided relief for many corporations which find it difficult to distribute dividends in cash. Both the surtax and cash distributions may be avoided by the payment of dividends in obligations of the corporation, section 27 (e), or by securing the allowance of a consent dividends credit, section 28. While these provisions may not have been available to the petitioner, for reasons suggested in the findings of fact, we think that the application of the personal holding company surtax to the petitioner is constitutional. The Fifth Amendment does not require equal treatment in the imposition of taxes. *Morris Investment Corporation* v. *Commissioner*, *supra*.

The final question concerns the penalty for failure to file a personal holding company return. Section 291 provides for the imposition of the penalty "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." The petitioner has shown that it submitted all of the facts to its attorney and that it relied upon his advice that a return for 1942 should not be filed. The respondent admitted in his answer that "petitioner's counsel is familiar with provisions in the Code relating to personal holding companies and is a competent and experienced practitioner in Federal tax matters." We have held, in numerous cases, that reasonable cause for failure to file a return is shown by a taxpayer who acts in good faith and relies upon the advice of a reputable attorney or accountant that no return is required. See *C. R. Lindback Foundation*, 4 T. C. 652; *Agricultural Securities Corporation*, 39 B.T.A. 1103; affirmed on other grounds, 116 Fed. (2d) 800.

The respondent contends that the petitioner's attorney did not unqualifiedly advise it not to file a personal holding company return; that there was no reasonable ground for such advice as was given; that there was doubt in the attorney's mind, but he made no effort to obtain an official ruling from the Commissioner; and that the petitioner willfully ignored its attorney's advice to answer all questions on its corporation return, thus concealing that 50 per cent or more of its stock was owned by one trust. The respondent relies upon *Tarbox Corporation*, 6 T. C. 35, and two memorandum opinions.

In the *Tarbox* case we refused to lift the penalty because there the failure to file a required return was due either to "ignorance of the law" or "reliance upon an agent to whom, apparently, insufficient information was disclosed or who likewise was unfamiliar with the requirements of the taxing statute," neither of which is a reasonable cause. Clearly, that is not the present case. The petitioner's attorney was fully informed. The petitioner submitted all of the facts to him and his advice can not be impeached for lack of information. The respondent argues that the petitioner concealed information by ignor-

ing its attorney's advice to answer question 9 (b) on Form 1120. A similar question was answered falsely in the *Tarbox* case. There the answer showed that the accountant who prepared the return had not been sufficiently informed. Here the return was prepared and filed by the petitioner's officers and the failure to answer the question has no bearing upon the petitioner's good faith in obtaining advice. The petitioner's good faith in filing Form 1120 with the Commissioner is a different problem. But we think it unnecessary to consider the materiality of that problem in this proceeding, except to state our opinion that the petitioner's failure to answer question 9 (b) is a neutral fact. On all the evidence, there is no reason for questioning the good faith of either the petitioner or its attorney.

The respondent obviously relies exclusively on the attorney's letter of March 1, 1943, in contending that the petitioner's attorney did not unqualifiedly advise it not to file a personal holding company return. That letter was followed by a telephone conversation between the attorney and one of the petitioner's officers. Later, after the promulgation of the appellate decision in the *Woodside* case, the attorney and another officer conferred in person. In each instance the attorney advised against the filing of the return and the petitioner's officers relied upon his advice in failing to do so.

We think the petitioner has shown that its failure to file a personal holding company return was due to reasonable cause and not due to willful neglect.

We hold that the petitioner is not liable for the penalty.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

BLACK AND JOHNSON, *JJ.*, dissenting: We dissent from the majority opinion wherein it holds that petitioner during the taxable year was a "personal holding company" within the meaning of the applicable statute. Concededly, more than 50 per cent of petitioner's stock was owned by or for not more than five individuals and from the standpoint of stock ownership it meets the requirements of a personal holding company. However, from the standpoint of percentages of gross income, we do not think it falls within the classification of a personal holding company. Section 501 (a) (1) of the Internal Revenue Code provides, among other things, as follows:

SEC. 501. DEFINITION OF PERSONAL HOLDING COMPANY.

(a) GENERAL RULE.—For the purposes of this subchapter and chapter 1, the term "personal holding company" means any corporation if—

(1) GROSS INCOME REQUIREMENT.—At least 80 per centum of its gross income for the taxable year is personal holding company income as defined in section 502; * * *

In the taxable year petitioner had gross income from dividends of $74,985 and this is concededly one of the classes of income defined by section 502 of the code. Petitioner also had gross receipts from its farming operations in the amount of $19,115.71. This represented cash received from sales of grapes, wheat, buckwheat, and potatoes. This sort of income is not one of the classes defined in section 502 of the code. It is conceded that if this $19,115.71 of gross receipts which petitioner received from its farming operations was *gross income* to it, then the $74,985 dividends which it received did not constitute 80 per cent of its gross income from all sources as provided in section 501(a) (1), *supra*.

For the purposes of the computation of its regular corporate income tax, the $19,115.71 of gross receipts of petitioner from its farming operations was undoubtedly part of *its gross income.* Section 29.22 (a)-7, of Regulations 111 provides in part as follows:

SEC. 29.22 (a)-7. GROSS INCOME OF FARMERS.—A farmer reporting on the basis of receipts and disbursements (in which no inventory to determine profits is used) shall include in his gross income for the taxable year (1) the amount of cash or the value of merchandise or other property received during the taxable year from the sale of live stock and produce which were raised during the taxable year or prior years, (2) the profits from the sale of any live stock or other items which were purchased, and (3) gross income from all other sources. * * *

Petitioner's books were kept and its returns were filed on a cash basis. Therefore, the foregoing regulation is directly applicable in the filing of petitioner's income tax return on Form 1120. But the Commissioner contends that the foregoing regulation is not applicable when it comes to determining whether petitioner is a "personal holding company" under section 501 (a) (1) of the code. We see no sound basis for that contention. Congress passed section 351, of the Revenue Act of 1934 (now section 501 (a) of the code), defining a personal holding company, long after the above regulation was first promulgated as article 38 of Regulations 45 (1918 Act). Congress also provided in what is now section 507 of the code that "The terms used in this subchapter shall have the same meaning as when used in Chapter 1." Therefore, it is reasonable to assume that, in using the term "gross income" in section 501 (a) (1), Congress had in mind the meaning of that term as then defined in the existing regulation. If the $19,115.71 was part of petitioner's gross income for income tax purposes, as it undoubtedly was, then we see no reason why it should not be counted a part of petitioner's gross income in determining whether it is a "personal holding company."

Respondent relies on our decision in *Woodside Acres, Inc.*, 46 B. T. A. 1124, affd., 134 Fed. (2d) 793. Although the facts in that case are in some respects different from the facts in the instant case, it must be conceded that case does seem to support respondent's position

and likewise the conclusion reached in the majority opinion. Although the *Woodside Acres* case has been affirmed by the Second Circuit, still, with all due respect to that learned court, we think the decision in that case was wrong and, therefore, we respectfully record our dissent to the majority opinion in the instant case, wherein it holds petitioner was a personal holding company. We do not dissent from the majority opinion wherein it holds that petitioner is not liable for a delinquency penalty for failure to file a personal holding company return on Form 1120 H. If petitioner was not a personal holding company, as we think it was not, then it follows as a matter of course it would not be subject to a penalty for failure to file a personal holding company return.