Electroline Sales Company (formerly Electroline Manufacturing Co.) v. Commissioner.
Electroline Sales Co. v. Commissioner
Docket No. 24639.
United States Tax Court
1951 Tax Ct. Memo LEXIS 336; 10 T.C.M. (CCH) 113; T.C.M. (RIA) 51032; January 30, 1951
*336 Petitioner received rent for use of its building by a partnership composed of three of its stockholders owning over 25 per cent of its stock. Held, the rent constituted personal holding company income, following Furniture Finance Corp., 46 B.T.A. 240. Petitioner relying on the advice of an experienced practicing accountant who audited its books and prepared tax returns for it and others did not file personal holding company returns. Held, the failure to file was due to reasonable cause and not to willful neglect. Richard Katcher, Esq., 1130 B. F. Keith Bldg., Cleveland, Ohio, for the petitioner. William H. Bagby, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined deficiencies in personal holding company surtax for the calendar years 1944 and 1945 in the amounts of $2,601.34 and $2,238.15, respectively, and 25 per cent penalties in the amounts of $650.34 and $559.54, respectively, for failure to file personal holding company returns for such years. Petitioner contests the determinations that it had personal holding company income in such years and that it is liable for the penalties. Petitioner filed federal income and declared value excess-profits tax returns with the collector of internal revenue at Cleveland, Ohio, for the calendar years 1944 and 1945, *338 on the accrual basis. Findings of Fact The stipulated facts are so found. Other facts stated are found from the evidence adduced. The petitioner is a corporation organized under the laws of Ohio in 1940. Its principal office is in Cleveland, Ohio. Petitioner's name originally was Electroline Manufacturing Company. The name was changed about 1944 to Electroline Sales Company. Joseph Morgenstern was the president of petitioner from its incorporation. His sons Elliott and David were, respectively, vice president and treasurer. Julius Klein, not related to the Morgensterns, was secretary. Bertha Morgenstern, wife of Joseph, became a stockholder in 1944 by virtue of a gift of stock from her husband. The petitioner issued 200 shares of stock. The shares were owned as follows: 9-25-40
1-1-42
12-15-42
8-31-44
to 1-1-42
to 12-15-42
to 8-31-44
to 1-1-46
Joseph Morgenstern
102.90
90.90
123.74
1.74
Elliott Morgenstern
10
10
10
David Morgenstern
30.43
30.43
63.26
63.26
Bertha Morgenstern
122
Julius Klein
3
3
3
Esther Vision
66.67
65.67
Prior to 1944, petitioner was engaged in manufacturing and distributing electrical *339 and automotive supplies and accessories. In 1944 and 1945 the manufacturing was taken over by a partnership doing business as Electroline Manufacturing Company, composed of Joseph, David, and Elliott Morgenstern, each having a one-third interest. The petitioner in those years owned a building at 1975 East 61st Street, Cleveland, which it leased to the partnership. Petitioner received rent from the partnership in the amounts of $10,400 in 1944 and $10,800 in 1945. In 1944 petitioner's only other income consisted of $428.54 interest from the partnership, $559.96 interest on United States obligations, and $1,366.42 realized through recovery of a bad debt. In 1945 petitioner's only other income was $410 from interest on United States obligations. The officers of petitioner intended to have the corporation handle sales and distribution of the products of the partnership, but it had no income from that source in the taxable years. Petitioner's tax returns were prepared by or under the direction of Horatio S. Mitchell, who was a practicing accountant and maintained offices in the Schofield Building, in Cleveland. He was not a Certified Public Accountant. He died in December 1946. He had *340 been a practicing accountant since about 1921 and was authorized to practice before the Treasury Department. He handled the tax matters of several concerns and had a good reputation. His clients relied on his judgment in preparing tax returns. The financial statements he prepared were accepted by banks. He employed one or more assistants. He handled discussions with agents of the Bureau of Internal Revenue concerning returns prepared for his clients. He had charge of preparing Joseph Morgenstern's tax returns since 1934 and prepared returns for other members of the family, as well as for their business ventures. Petitioner's books and stock records were available to Mitchell or his assistants, who came every month to examine them. Upon the transfer of stock from Joseph to Bertha, Mitchell prepared a gift tax return. In petitioner's income and declared value excess-profits tax return for 1940, the question, "Is the corporation a personal holding company within the meaning of section 501 of the Internal Revenue Code?", was answered, "No." This question was unanswered on the 1941 return. In the 1944 and 1945 returns, this question was answered "No." The question, *341 "Did any corporation, individual, partnership, trust or association own at any time during the taxable year 50 per cent or more of your voting stock?", was answered "Yes" on the 1940 return and "No" on the returns for 1941, 1944, and 1945. The answers to these questions were inserted by Mitchell, or at his direction. Petitioner's 1944 and 1945 federal income and declared value excess-profits tax returns were prepared by Charles Barnes, an employee of Mitchell. Barnes at one time inquired of Mitchell whether petitioner was a personal holding company, and Mitchell answered in the negative. Barnes did not discuss the returns with Morgenstern. Petitioner's returns were signed by Joseph Morgenstern, president. Joseph Morgenstern was born in Russia and came to the United States in 1903. He had a Hebrew education in Russia and two years of night school education in the United States. He was chief financial officer of petitioner and had supervision over the preparation of its tax returns. He had no instruction in federal tax law and depended upon Mitchell for tax counsel and accounting advice and for preparing federal, state, and local tax returns for himself and petitioner. He relied on *342 Mitchell's advice. He examined the returns prepared by Mitchell and answered any questions Mitchell asked about the business, but did not discuss the returns. Prior to 1946, he had not heard of personal holding companies and did not know of the requirements for returns of such companies. He had no discussion with Mitchell on that subject. Petitioner was a personal holding company within the meaning of section 501 of the Internal Revenue Code during 1944 and 1945. Petitioner did not file personal holding company returns for such years. Petitioner's failure to file personal holding company returns for such years was due to reasonable cause and not to willful neglect. Opinion The first issue is whether respondent erred in determining that petitioner was a personal holding company subject to the surtax imposed by section 500 of the Internal Revenue Code. Section 501 defines "personal holding company" as including a corporation (with certain exceptions not here material), the stock of which is owned by not more than five individuals if at least 80 per cent (in some circumstances 70 per cent) of its income is "personal holding company income. *343 " Section 502 defines "personal holding company income" as the portion of the gross income which consists of dividends, interest, and other specified items of income, including: "(f) USE OF CORPORATION PROPERTY BY SHAREHOLDER. - Amounts received as compensation (however designated and from whomsoever received) for the use of, or right to use, property of the corporation in any case where, at any time during the taxable year, 25 per centum or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for an individual entitled to the use of the property; whether such right is obtained directly from the corporation or by means of a sublease or other arrangement." Petitioner concedes that in the taxable years its stock was owned by not more than five individuals and that the rental paid by the partnership was over 80 per cent of petitioner's gross income in each year, but denies that the rent was personal holding company income. Petitioner contends that the partnership which paid the rent was an entity separate and distinct from its members and that the requirement of subsection (f) that 25 per cent of the stock be owned by an individual entitled *344 to the use of the property is not met when a partnership is entitled to such use. Petitioner cites Minnesota Mortuaries, Inc., 4 T.C. 280, in which rents paid the taxpayer by a corporation, the stock of which was principally owned by the taxpayer, were held not personal holding company income since no individual, but a corporation, was entitled to the use of the property. Petitioner argues that the same conclusion should be reached where a partnership is the user. In support of this argument, petitioner refers to certain provisions of the Uniform Partnership Act, as enacted in Ohio, and to certain provisions of the Internal Revenue Code which treat a partnership as a business entity. The question has been considered and decided by this and other tribunals. It has uniformly been held that where a partnership, composed of holders of the requisite proportion of stock, is entitled to the use of the property, the rent paid is personal holding company income. Furniture Finance Corporation, 46 B.T.A. 240; Randolph Products Company v. Manning, 176 Fed. (2d) 190; Walnut Street Co. v. Glenn, 83 Fed. Supp. 945. As pointed out in the Randolph *345 Products Company case, each partner, as a co-owner of partnership property, is entitled to the use and possession thereof in common with his partners and such use falls within the provisions of section 502 (f). We are not persuaded that these decisions are inconsistent with the Uniform Partnership Act or the provisions of the Internal Revenue Code referred to by petitioner. Similar contentions with respect to the effect of the Uniform Partnership Law and the Internal Revenue Code were considered in Randolph Products Co. v. Manning, supra, where the Court relied on the interpretation in Commissioner v. Whitney, 169 Fed. (2d) 562, that neither the Uniform Partnership Act, as enacted in New York, nor the revenue laws form any basis for treating a partnership as a taxable entity. We think that the cited cases are controlling. Petitioner also contends that section 502 (f) was not intended to apply to the situation here, where a corporation, in recasting its business from that of a manufacturer to a distributor, finds itself temporarily in a position of deriving most of its income from rentals of property to a partnership engaged in a bona fide manufacturing *346 operation. However, the express language of the statute is too clear to admit of such an exception. Olean Times Publishing Co., 42 B.T.A. 1277; appeal dismissed. Petitioner also argues that section 223 of the Revenue Act of 1950 shows that the Congress never intended to treat rentals of the type received by petitioner from this partnership as personal holding company income. Such section 223 provides that section 502 (f) "* * * shall not apply with respect to rents received during taxable years ending after December 31, 1945, and before January 1, 1950, if such rents were received for the use by the lessee, in the operation of a bona fide commercial, industrial, or mining enterprise, of property of the taxpayer." This provision of the Revenue Act of 1950 does not help the petitioner. The Congress there considered the application of section 502 (f) to genuine business enterprises, found that some were adversely affected by the statute, and saw fit to suspend its application with respect to certain stated years. [1] The relief legislation did not extend to the years 1944 and 1945, and we must infer that there was no Congressional intention to suspend the application *347 of section 502 (f) with respect to those years, notwithstanding taxpayers engaged in bona fide enterprises in those years may also have been adversely affected. *348 We conclude that respondent's determination that petitioner was a personal holding company in 1944 and 1945 was correct. The remaining issue is whether respondent was correct in asserting the 25 per cent penalty for failure to file personal holding company returns. Under section 291 (a) of the Internal Revenue Code, [2] this penalty is applicable unless petitioner shows that its failure to file was due to reasonable cause and not to willful neglect. Petitioner engaged a practicing accountant of many years experience, who in his practice prepared financial statements and tax returns for a number of clients, and entrusted to him the preparation of such federal, city, county and state tax returns as should be necessary, disclosing to him all the facts concerning petitioner's business. Petitioner's books were open to the accountant who checked them monthly and the records and stock register which showed the ownership of the stock were subject to his inspection. That he noted them is shown by the fact that he prepared a gift tax return upon the gift of stock by Joseph to Bertha Morgenstern. It also appears from the inquiry of his assistant mentioned in our findings *349 of fact that the accountant considered the question whether petitioner was a personal holding company and concluded that it was not. The fact that he may have been wrong is not fatal to petitioner. Brooklyn and Richmond Ferry Co., Inc., 9 T.C. 865; see also, Garrett Holding Corp., 9 T.C. 1029. Although respondent asserts that Morgenstern prepared the income tax return of petitioner for 1940, since he signed the affidavit of the preparing agent, Morgenstern testified positively that he never made out a tax return. It is evident that he signed the affidavit by mistake in the process of signing the return prepared by the accountant. Under the facts as shown, petitioner's failure to file the returns was due to reasonable cause and not to willful neglect. Reliance Factoring Corporation, 15 T.C. 604, (November 10, 1950). Respondent is reversed as to the penalty. *350 Decision will be entered under Rule 50. Footnotes
1. Senate Report No. 2375, 81st Cong., 2d Sess., pp. 64,65, states: If a closely held corporation receives most of its income from such sources as dividends, interest, certain rents, and royalties, indicating that the company is being used as an "incorporated pocketbook," it is designated for tax purposes as a personal holding company. Generally, such a company, in addition to paying the regular corporate income taxes, is subjected to an additional penalty tax at the rate of 75 percent or 85 percent on its undistributed income. Included in personal holding company income are amounts received for the use of the corporation's property where 25 percent or more of the stock in the corporation is held by the individual renting the corporate property. The attention of your committee has been called to examples where, through a set of fortuitous circumstances, corporations have become closely held and also have rented most of their assets for use in the operation of businesses to the individuls holding the stock of the companies. Thus, unwittingly the corporations have become personal holding companies and subject to the penalty tax. While your committee recognizes that such arrangements could result in tax avoidance, and, therefore, does not permit such practices in the future, it believes that relief for past years should be given where such arrangements have been unwittingly entered into with no thought of tax avoidance. Thus, your committee's bill in section 226 limits the application of section 502(f) of the Code (defining personal holding company income) to eliminate, for taxable years ending after 1945 and before 1950, rents for the use of a corporation's property by persons holding 25 percent or more of the stock of the company where the property is used by such persons "* * * in the operation of a bona fide commercial, industrial, or mining enterprise * * *." It is anticipated that the revenue loss from this proposal will be nominal.↩
2. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612 (d) (1).↩