Moses McKissack, IV v. Commissioner. Moses McKissack, IV, and Natalie McKissack v. Commissioner.
McKissack v. Commissioner
Docket Nos. 2977-66, 2978-66.
United States Tax Court
T.C. Memo 1969-105; 1969 Tax Ct. Memo LEXIS 193; 28 T.C.M. (CCH) 557; T.C.M. (RIA) 69105; May 20, 1969, Filed Quentin L. Housholder, for the petitioners. John M. Wylie, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: In these consolidated cases, the Commissioner determined income tax deficiencies and additions to tax as follows: Petitioner
Taxable
Deficiency
Additions
Year
to Tax
Section
Section
Section
6651(a)
6653(a)
6654(a)
Moses McKissack, IV
1963
$ 3,272.78
$ 379.05
$163.64
$ 21.38
Docket No. 2977-66
1964
5,735.62
1,069.26
286.78
103.13
Moses McKissack, IV, and
1959
12,770.14
0
638.51
0
Natalie McKissack
Docket No. 2978-66
1960
11,319.00
1,697.85
855.57
0
1961
7,802.97
1,170.45
418.70
0
1962
4,406.73
745.74
227.41
0
*195 The issues for our decision are: (1) Whether petitioners incurred travel and entertainment expenses during the taxable years 1959 through 1964 and if so, what amounts are properly deductible under section 162, Internal Revenue Code of 1954; [1]
(2) Whether petitioners may deduct certain "itemized" expenses for the years 1959 through 1964 and if so, in what amounts; (3) Whether petitioners' failures to file timely income tax returns for the years 1960 through 1962, and Moses' failure to file timely income tax returns for the years 1963 and 1964, were due to reasonable causes so as to avoid the additions to tax under section 6651(a); (4) Whether petitioners' underpayments of tax for the years 1959 through 1962, and Moses' underpayments of tax for the years 1963 and 1964, were due to negligence or intentional disregard of rules and regulations, making the additions to tax under section 6653(a) applicable; and (5) Whether petitioner, Moses, is liable for the additions to tax under section 6654(a) for his failure to pay estimated income tax for 1963 and 1964. *196 Findings of Fact Petitioners Moses McKissack, IV (hereinafter called petitioner or Moses) and Natalie McKissack are husband and wife. 558 At the time their petitions in these cases were filed, they resided in Nashville, Tennessee. During the taxable years 1959 through 1964, Natalie S. McKissack (hereinafter sometimes referred to as Natalie) considered Indianapolis, Indiana, her home. She lived there, voted there, and was a licensed automobile driver in that State. Petitioners filed joint individual income tax returns for the taxable years 1959 through 1962 with the district director of internal revenue at Nashville, Tennessee. For the taxable years 1963 and 1964, the petitioners did not file either joint income tax returns or separate returns. On June 14, 1965, acting under the authority of section 6020 (b)(1), the district director of internal revenue, Nashville, Tennessee, prepared and processed substitute individual income tax returns for Moses for the years 1963 and 1964. During the taxable years 1959 through 1964, Moses was president of McKissack and McKissack, Inc. (hereinafter referred to as McKissack, Inc. or the corporation), located in Nashville, Tennessee. The *197 corporation was engaged for the most part in designing and building churches in cities throughout the United States, and Moses' duties as an employee included promoting McKissack, Inc.'s design and construction of new churches. During the years 1959 through 1961, petitioner was paid on a commission basis and for the years 1962 through 1964, petitioner received a salary plus a commission from McKissack, Inc. He also received other income in 1959 and 1960 from "McKissack and McKissack, Architects" (hereinafter referred to as McKissack, Architects). During the years 1959 through 1964, McKissack, Inc. Advanced other funds to petitioner. Part of the monies Moses received from the corporation were used to pay traveling and entertainment expenses. He did not regularly account to McKissack, Inc. for any of these expenses, but on occasion would submit a voucher or bill for reimbursement. During the years 1959 through 1964, petitioner received the following amounts from McKissack, Inc. and McKissack, Architects: Year
McKissack, Inc.
McKissack,
Architects
1959
$42,770.65
$7,500.00
1960
47,117.04
4,000.00
1961
37,448.00
0
1962
24,086.15
0
1963
11,752.00
0
1964
18,161.82
0
*198 For the years 1959 through 1962, petitioners claimed substantial business deductions on their joint income tax returns. The Commissioner allowed deductions for trade or business expenses in the amount of 30 percent of the expenses claimed. The following schedule sets forth the amounts deducted on petitioner's tax returns and amounts allowed and disallowed by the Commissioner: Item
1959
1960
1961
1962
Interest on business
$ 243.45
$ 262.92
$ 0
$ 0
indebtedness
Taxes on business and
49.28
5.00
0
5.50
business prop.
Draftman
0
0
0
100.00
Depreciation
502.25
553.90
428.90
428.90
Supplies - office
0
83.36
90.96
0
Commissions
255.00
0
2,950.00
0
Repairs
0
0
36.50
0
Telephone and telegram
1,715.57
86.25
1,516.68
185.48
Common services
0
28.75
5.50
0
Rail and air
4,598.44
5,311.67
6,876.71
5,785.02
Meals and lodging
18,675.64
11,263.61
11,857.57
7,804.97
Taxi
224.12
202.88
201.93
294.62
Auto rentals
2,844.93
3,701.93
3,440.52
0
Laundry
416.07
0
0
0
Tips, baggage and storage
1,079.04
657.20
1,291.57
856.65
Secretary
105.00
417.00
0
0
Math error on return
420.00
2.00
0
0
Air travel insurance
0
0
131.15
0
Auto expense
2,924.18
2,166.49
1,497.15
748.58
Postage
428.74
66.70
94.78
88.87
Entertainment
5,620.20
3,754.38
4,006.59
4,246.74
Local transportation
0
0
0
748.57
expenses
Utilities for showroom
102.41
619.28
59.98
0
Subscriptions and dues
0
37.00
0
0
Bank charges, check books,
11.50
0
3.25
145.75
& bank ser.
Express, baggage, etc.
0
8.25
0
0
Legal & accounting & other
200.00
5,666.76
200.00
290.00
professional services
Appraisals & surveys
470.00
0
0
0
Less excessive expense
0
* (2,530.19)
* (2,501.09)
0
Total business expense
40,885.82
32,365.14
32,188.65
21,729.64
deducted on the joint
return
Less amount allowed in
12,265.75
9,709.54
9,656.59
6,518.89
statutory notice (30
percent)
Amount disallowed and
$28,620.07
$22,655.60
$22,532.06
$15,210.75
disputed by petitioner
*199 * This amount was deducted from the total business expenses listed on schedule c-2 of the tax return with the notation beside the amount as shown above. Subsequent to the issuance of the statutory notices for the years 1959 through 1964, the parties agreed that the following expenses were deductible [2] as business expenses for the taxable years specified: Accounting and Legal Fees
Year
Amount
1959
$ 200.00
1961
200.00
1963
100.00
1964
1,005.75
The Commissioner also disallowed all itemized deductions claimed on petitioners' 1959 through 1962 joint income tax returns, allowing the statutory $1,000 standard deduction in lieu thereof. No income tax returns were filed by petitioner for the taxable years 1963 and 1964, and the Commissioner allowed a $500 standard deduction for those years. Subsequently, the parties agreed that petitioners should be allowed to deduct at least the following itemized deductions for the specified taxable years in issue: Item
1959
1960
1961
1962
1963
1964
Contributions
$ 650.00
0
$ 611.00
0
$200.00
$20.00
Interest
84.00
0
434.26
0
0
0
Taxes
370.42
$75.13
540.76
0
0
0
Miscellaneous
0
0
0
0
0
60.00
Total
$1,104.42
$75.13
$1,586.02
0
$200.00
$80.00
*200 During 1960 through 1964, petitioner recorded amounts for breakfast, lunch, dinner, lodging, entertainment, tips, airplane fees, auto rental, storage, wash, auto repair, gas, oil, telephone, postage, laundry, supplies, and expenses for several miscellaneous categories in shirt-pocket size daily diaries. Each diary covered a 1-week period and normally expenses would be recorded in the daily diaries on the same day or within 1 to 2 days after they had been incurred. Generally the diaries were maintained on a regular basis. However, for the year 1963 no diary was submitted into evidence for the last week in November or for any week during the month of December. No expenses were recorded in the diaries from June 14, 1964 to August 22, 1964; from September 20, 1964 to November 14, 1964; and from December 20, 1964 to December 31, 1964. For the year 1959, no diaries were presented as evidence. Petitioner claimed the daily diaries had been lost. Petitioner's accountant, R.B.J. Campbelle, Sr. (hereinafter sometimes *201 referred to as Campbelle) had prepared a summary from the 1959 daily diaries, and the summary was put in evidence. The summary was a 12-column journal (hereinafter referred to as "the journal"), containing a day-by-day listing of expenses for meals, lodging, entertainment, and others similar to those listed in the daily diaries. Other than the amounts stipulated or allowed in the notices of deficiency by the Commissioner, there were presented no receipts, bills, or other documentary evidence 560 to support the entries in the journal for the year 1959 or for the entries in daily diaries for the years 1960 through 1964. The journal for 1959 contained no information about the business purpose of any of the recorded expenses and little information was contained in the daily diaries for the years 1960 through 1964 as to the business purpose of the trips made, the nature of any business discussions, the location of the entertaining, the type of entertainment, or the persons entertained. Petitioner did submit a schedule of his itineraries, but these only indicated dates, locations, and business purposes for petitioner's trips for all years in question except 1959 when business purpose *202 was not shown on the schedule. During the years in issue, petitioner maintained a residence in Nashville, Tennessee, consisting of three bedrooms, one bath, living room, dining room, and kitchen. When petitioner remained in Nashville overnight, he stayed at his residence. Petitioners also maintained a duplex in Indianapolis, Indiana, one of which served as their living quarters when they stayed in Indianapolis. This half of the duplex consisted of two bedrooms, a living room, kitchen, and two baths. It contained paneling and doors of the type that were used in the construction of a church and also served as petitioner's office and showroom. The other half of the duplex was rented to third parties and consisted of two bedrooms, a bath, kitchen, and living room. As a general rule, when petitioner stayed overnight in Nashville or Indianapolis, he nevertheless recorded in his daily diary expenses for lodging and meals without any additional explanation. Petitioner retained a certified public accountant who prepared the following summary of his expenses: Travel and Entertainment Expense
1959
1960
1961
Room and board
$16,570.56
$11,263.61
$11,857.57
Airplane fees
0
5,311.67
0
Taxi, bus & auto rental
308.00
3,904.81
273.31
Storage, wash, repair - auto
1,735.64
960.08
1,224.29
Gas and oil
629.72
789.99
596.33
723.91
258.34
Entertainment
5,379.70
3,754.38
4,006.59
Tips
1,079.04
657.20
844.08
Telephone and postage
139.55
152.95
314.40
Secretarial and other help
437.40
417.00
112.46
Laundry
379.82
181.17
0
Supplies & Miscellaneous
105.34
83.36
64.00
Donations
125.00
1,511.32
1,446.72
Total
$26,889.77
$28,987.54
$20,739.75
*203 Travel and Entertainment Expense
1962
1963
* 1964
Room and board
$10,708.30
$10,164.93
$4,790.27
Airplane fees
5,693.79
24.06
0
Taxi, bus & auto rental
434.96
259.78
145.28
Storage, wash, repair - auto
521.21
883.72
308.64
Gas and oil
596.33
Entertainment
4,246.74
3,102.79
1,397.29
Tips
856.65
672.04
312.85
Telephone and postage
274.35
212.40
81.17
Secretarial and other help
10.00
393.11
0
Laundry
0
29.00
0
Supplies & Miscellaneous
60.60
77.30
421.60
Donations
841.45
616.40
0
Total
$24,371.96
$16,693.87
$7,457.10
* For the period January 1, 1964 to June 13, 1964. The schedule above was based on other summaries prepared by Campbelle from daily diaries. A certified public accountant test-checked the summaries into the daily diaries and it was his opinion that the schedules were reliable summations of the daily diaries. The amounts shown on the travel and entertainment summary above differ from the business expenses claimed on petitioner's tax returns for the years 1959 through 1962 in the amounts shown below, but no basic evidence was presented to substantiate the expenses claimed in excess of the *204 totals from the daily diaries: 561 1959
Item
Claimed on
Total
$ 769.87
Business Expense Information Contained on T & E Summary Difference Commissions
Commissions $ 255.00 $ 0 $ 255.00
Telephone 1,715.57 0 1,715.57
Rail & air 4,598.44 0 4,598.44
Meals & lodging 18,675.64 16,570.56 2,105.08
Taxi & auto rentals 3,069.05 308.00 2,761.05
Laundry 416.07 379.82 36.25
Auto expense 2,924.18 2,365.36 558.82
Postage 428.74 139.55 289.19
Entertainment 5,620.20 5,379.70 240.50
Utilities 102.41 0 102.41
Bank charges 11.50 0 11.50
Appraisals & surveys 470.00 0 470.00
Interest on business indebtedness 243.45 0 243.45
Taxes on business property 49.28 0 49.28
Depreciation 502.25 0 502.25
Total 1960 $13,938.79
Interest on business indebtedness $ 262.92 $ 0 $ 262.92
Taxes on business and property 5.00 0 5.00
Depreciation 553.90 0 553.90
Utilities for showroom 619.28 0 619.28
Professional services 5,376.76 0 5,376.76
Subscriptions & dues 37.00 0 37.00
Express, baggage 8.25 0 8.25
Odd jobs 28.75 * 0 28.75
Automobile expenses 2,166.49 1,750.07 416.42
Total $ 7,308.28 1961
Depreciation $ 428.90 $ 0 $ 428.90
Repairs 36.50 0 36.50
Commissions *205 2,950.00 0 2,950.00
Telephone 1,516.68 314.40 1,202.28
Utilities 59.98 0 59.98
Common services 5.50 0 5.50
Rail and air 6,876.71 0 6,876.71
Air travel insurance 131.15 0 131.15
Auto rentals 3,440.52 273.31 3,167.21
Total $14,858.23 1962
Depreciation $ 428.90 $ 0 $ 428.90
Taxes on business and business property 5.50 0 5.50
Bank services 144.24 0 144.24
Draftman 100.00 0 100.00
Rail & air 5,785.02 5,693.79 91.23
Total $ 769.87 * Includes storage, wash, and repair Gas and oil. $ 960.08+789.99=$1,750.07 562 During the year 1960, petitioner paid the Reverend J. I. Dixon $5,000 and deducted this amount on his tax return as a business expense. After petitioner had secured a contract to build a church for Reverend Dixon's congregation, he paid the money to the minister to compensate him for aiding petitioner with the promotion of the construction project. Petitioners filed their joint income tax returns for the taxable years 1960 through 1962 on the following dates: Taxable Year
Date Filed
1960
July 19, 1961
1961
July 17, 1962
1962
July 16, 1964
For the taxable years 1963 and 1964, petitioners failed to file tax returns, and the Commissioner filed substitute returns. Petitioners did not file with the Internal Revenue Service a request for an extension of time in which to file their tax return for any of the years in question. On their 1960 and 1961 tax returns, petitioners included in their computation of tax an amount for additions to tax for failing to file timely tax returns. Petitioners' returns for the taxable years 1959 and 1960 were first assigned to an agent of the Commissioner for audit in February of 1962. The initial contact by a revenue agent was on or around June 4, 1962. During the latter part of June 1962, the audit of the returns was suspended because of the initiation of a fraud investigation of a related taxpayer. In July 1964, the audit of petitioners' income tax returns began again and included the years 1961 and 1962. Petitioner was led to believe by his accountant, Campbelle, that his income tax deficiencies (including the year 1963) would be computed on a net worth method and that it was unnecessary for him to file a tax return for 1963. Based upon this belief, petitioner did not file a tax return either for 1963 or for 1964. In July 1964, the Commissioner, through an agent, learned for the first time that a 1963 income tax return had not been filed by petitioner. In June 1965, the Commissioner first learned that a 1964 income tax return had not been filed by petitioner. The Commissioner's agents never stated or otherwise informed petitioner or anyone else that it would be unnecessary for petitioner to file tax returns for 1963 and 1964. During the third week of May 1965, the revenue agent advised Campbelle that the audit of petitioners' joint returns was being finalized. The agent told him that a final report would be submitted on June 1, 1965, unless further information was obtained relating to the audit. On June 1, 1965, the revenue agent talked with Campbelle and ascertained that no additional information would be forthcoming. The agent was then asked what disposition would be made of the years 1963 and 1964. Subsequently, the agent advised Campbelle that the Internal Revenue Service would file substitute returns for petitioner for the years 1963 and 1964. In order to prepare the substitute returns, Campbelle gave the Commissioner's agent the information he had regarding the petitioner's income for the years 1963 and 1964. At that time, no information was received from Campbelle in regard to itemized deductions or business expenses for 1963 and 1964 and the standard deduction was allowed in the statutory notice. It was not until March 1966, that the Commissioner's agent received any books or records purportedly pertaining to petitioner's taxable income or deductible expenses for the taxable years 1963 and 1964. The agent had advised Campbelle that if any itemized deductions or business deductions were to be claimed by petitioner subsequent to the filing of the substitute returns, a return would have to be filed by petitioner with the deductions claimed thereon. No return for either of these years has ever been filed by petitioner. Ultimate Findings Petitioners are not entitled to deductions for business expenses for the taxable years 1959 through 1964 in excess of the amounts allowed by the Commissioner in the statutory notices of deficiency. Petitioner is entitled to certain other itemized deductions for the years 1959 through 1964 in the amounts set out in the Findings of Fact. Petitioners are liable for the additions to tax, pursuant to section 6651(a), for their failure to file timely tax returns for the years 1960 through 1962. For the years 1963 and 1964, Moses is liable for the addition under section 6651(a). Petitioners are liable for the additions to tax, pursuant to section 6653(a), for the 563 years 1959 through 1962. For the years 1963 and 1964, Moses is liable for the additions under section 6653(a). Petitioner Moses is liable for the additions to tax, pursuant to section 6654(a), for his failure to pay estimated tax for the years 1963 and 1964. Opinion The first issue is whether petitioners properly deducted as trade or business expenses under section 162, [3] amounts that exceeded those allowed by the Commissioner in the notices of deficiency for the taxable years 1959 through 1964. *206 The trade or business of the principal petitioner herein (Moses) was that of an employee-officer of McKissack, Inc. He was responsible for selling McKissack, Inc.'s product, mainly designs and the construction of houses of worship, to congregations located throughout the United States. Accordingly, Moses was required to travel extensively. His expenses in this regard were borne in the first instance almost exclusively by Moses. It is the amount and deductibility of his travel and entertainment expenses that is in dispute herein. Pursuant to the advice of his accountant, Moses generally maintained a diary, recording in it his daily expenses. This was done for each day including those times when he spent nights in Nashville or Indianapolis (approximately 40 to *207 50 percent of the time). For the most part, the petitioner's evidence consisted of his oral testimony, the diaries, a schedule showing his itinerary for the years in question, and a journal for 1959 which his accountant had prepared from information furnished by Moses. Taxable years 1959 through 1962 The amounts in dispute for the years 1959 through 1962 are set out in the margin. [4] The years here in question are prior to 1963, so that the statutory provision in issue is section 162 solely. Initially, Moses' burden was to prove that the travel expenses he deducted were in fact incurred in the amounts he reported, that the expenses were reasonable and necessary traveling expenses, that they were incurred "while away from home," and that they were incurred in pursuit of business. Commissioner v. Flowers, 326 U.S. 465, 470. Petitioner *208 asserts that he properly deducted trade or business expenses on his tax return. As an alternative argument, he contends that at least the amounts listed in the daily diaries (somewhat less than those claimed on his tax return) should be found to be deductible as having been sufficiently proven by the evidence submitted. We cannot agree with either of petitioner's assertions. He has not presented any evidence fully supporting the totals deducted on the tax returns; he merely contends that the amounts deducted should be upheld because petitioner's accountant would only deduct allowable items. Petitioner's burden of proof is greater than simply asserting that amounts shown on the tax return are proper. We think something more than this must be shown before we can find the presumption of correctness attaching to the Commissioner's determination has been overcome by petitioner. Petitioner's alternative argument is that the evidence presented substantiates lesser amounts than those deducted on his income tax returns but greater than those allowed by the Commissioner, and that at least to this extent he has satisfied his burden of proof. The evidence petitioner has submitted is minimal. *209 It consisted of Moses' testimony, daily diaries, summaries thereof, and a listing of his itineraries. First, the testimony cannot be given significant weight as it was vague, general, and self-serving. In addition, we are not convinced that the diaries, in many instances illegible and unintelligible, accurately reflect the amounts expended. Nor are we satisfied that the 564 expenditures were reasonable and necessary traveling expenses or that they were incurred in the pursuit of his trade or business. See Commissioner v. Flowers, supra. For example, petitioner's diaries indicate that he incurred hotel expenses each day, even for the days he was in Nashville or Indianapolis, places where he maintained personal residences. Further, he entered in his diary substantial costs for breakfast, lunch, and dinner for each of the days he stayed in either of these two places. Thus the evidence conflicts with his testimony which in substance was that when he was in Indianapolis or Nashville, he stayed in his homes and did not expense any of the costs incurred for those times. Furthermore, included in the diaries were personal expenses consisting of, for example, expenses incurred *210 in taking Moses' wife out for dinner, and large losses when he attended race tracks. Petitioner also listed daily entertainment costs in amounts as high as $150; and it was commonplace for him to list as room and board expenses, amounts exceeding $100 per day. Having viewed the witness, we find it difficult to believe that petitioner, in fact, incurred the expenses recorded in the diary, or if incurred, that they qualify under the conditions enumerated in Flowers. Accordingly, the diaries themselves do not provide the evidence petitioner needs to sustain his burden of proof. As a last resort, petitioner urges us to apply the Cohan rule [5] in determining the amounts properly deductible by petitioner for these years. We believe the rule has already been generously employed by the Commissioner in petitioner's favor. In computing the amount of the deficiencies, the Commissioner allowed Moses' deductions in the amount of 30 percent of the total business expenses claimed on his income tax returns. Petitioners have not convinced us that the allowance of these amounts was erroneous. Accordingly, we uphold the deficiencies determined by the Commissioner for the years 1959 through 1962. *211 Taxable years 1963 and 1964 We must next determine whether petitioner may deduct certain travel and entertainment expenses for the years 1963 [6] and 1964. Petitioner failed to file tax returns for these years and the Commissioner, pursuant to the authority vested in him under section 6020(b)(1), [7] filed substitute tax returns for petitioner. At the time of the filing, the Commissioner did not have available any of petitioner's business expense records. Accordingly, the Commissioner did not deduct any amounts from petitioner's income to reflect travel and other business expenses allegedly incurred during those years. In so doing, petitioner contends that the Commissioner erred and that he should be allowed deductions in the amounts reflected in his daily diaries. *212 To qualify for the deduction for the taxable years 1963 and 1964, it is not sufficient that petitioner prove only that some travel and entertainment expenses were incurred, and that he should be allowed a deduction for some reasonable amount. For these years petitioner must satisfy more burdensome requirements, namely those specified in section 274 in addition to those of section 16. Wm. Andress, Jr., 51 T.C. 863. Specifically, section 274(d) [8] requires that petitioner maintain adequate records 565 sufficient to substantiate the expenditures. The regulation promulgated under Congressional authority provides that a diary may be an adequate record if it is "prepared or maintained in such manner that each recording of an element of an expenditure is made at or near the time of the expenditure." Section 1.274-5(c)(2)(ii), Income Tax Regs. The elements that must be recorded are: (1) amount of expenditure; (2) time; (3) place of travel; (4) business purpose; and (5) business relationship to the taxpayer of each person entertained. Section 1.274-5 (b)(1), Income Tax Regs.
*213 In this regard, petitioner has merely submitted into evidence his daily diaries. In addition to the fact that some of the expenses listed were not trade or business expenses, the writing contained therein was illegible and we cannot satisfy ourselves that the five aforementioned requirements have been fulfilled. Accordingly, we do not believe the diaries submitted constitute an adequate and reliable record of business expenditures within the contemplation of section 274(d). In toto, the evidence submitted was poorly organized. It was difficult to work with. Petitioner was admonished at trial that it was his responsibility to present the evidence in a manner which could be understood and that failure to do so would force this Court to uphold the Commissioner's determination. The petitioner did not heed these warnings. For example, many of the expenses recorded in the diaries did not reflect purely trade or business expenses, but included personal expenses. Petitioner made no effort to separate the business from the personal expenses, and being unable to do so from the facts before us, we have no alternative but to uphold the Commissioner's determination. Furthermore, section 1.274-5(c)(2)(iii), Income Tax Regs. *214 , makes it quite clear that for certain expenses a diary alone is insufficient substantiation under section 274(d), and that additional documentary evidence is necessary before a business deduction will be allowed for: (a) Any expenditure for lodging while traveling away from home, and (b) Any other expenditure of $25 or more, except, for transportation charges, documentary evidence will not be required if not readily available. In this regard, petitioner has not submitted to us any documentary evidence, so that clearly even if we were to accept his diaries, petitioner would still be precluded from deducting these expenses. See William F. Sanford, 50 T.C. 823, on appeal (C.A. 2); and Robert H. Alter, 50 T.C. 833. Concerning the amounts falling outside (a) and (b) above, petitioner has made no argument that he should be allowed to deduct these amounts nor has he attempted to segregate the amounts along these lines. We have no alternative but to uphold the Commissioner's determination. Next, we must decide whether the Commissioner erred in disallowing as a deduction petitioner's payment of $5,000 to Reverend J. I. Dixon during 1960. Basically, petitioner's *215 argument is that this was a cost of promoting a construction project for Reverend Dixon's congregation, and therefore deductible as a trade or business expense under section 162. Petitioner has the burden of overcoming the Commissioner's determination and must establish that this was an ordinary and necessary expense of carrying on his trade or business. Welch v. Helvering, 290 U.S. 111. This we think the petitioner has done. The record adequately proves that petitioner paid this $5,000 to compensate Reverend Dixon for his assistance in promoting the construction of a new church for his congregation. We are satisfied that the amount was expended in payment for services rendered by Reverend Dixon, and that these services were appropriate and helpful to the carrying on of petitioner's trade or business. V.H. Monette & Co., 45 T.C. 15, affirmed without discussion on this point, 374 F. 2d 116. Essentially, the Commissioner's argument is that by aiding petitioner and accepting 566 the money, Reverend Dixon breached his fiduciary duty to his congregation and therefore the payment should not be allowed as a deduction under section 162. We *216 disagree. First, we are not sure that a conflict of interest arises in this situation. In addition, even if compensating the minister for aiding in the promotion of the construction of a church may be a situation that should be scrutinized closely, we will not disqualify the expenditure as a business expense, where it otherwise qualifies, unless it clearly frustrates some sharply defined State or Federal policy. Lilly v. Commissioner, 343 U.S. 90. Nothing of the sort has been shown, and we hold petitioner may deduct the $5,000 payment as a trade or business expense for 1960. We have found, above, that petitioner incurred other "itemized" deductions. [9] These totals constituted amounts that were either agreed upon by the parties or were those otherwise adequately proven by petitioner. As petitioner has failed to adduce any other evidence to prove additional amounts, we find the aforementioned totals to be the amounts deductible by petitioner as "itemized" deductions. *217 The Commissioner also determined additions to tax under sections 6651(a), 6653(a), and 6654(a) as follows: Petitioner
Taxable
Additions to Tax
Year
Section 6651(a)
Section 6653(a)
Section 6654 (a)
Moses and
1959
0
$ 638.51
0
Natalie
1960
1,697.85
855.57
0
1961
1,170.45
418.70
0
1962
745.74
227.41
0
Moses
1963
379.05
163.64
$ 21.38
1964
1,069.26
286.78
103.13
$5,062.35
$2,590.61
$124.51 The additions to tax under section 6651 (a), [10] relate to petitioner's failure to timely file his tax returns for the years 1959 through 1964. To avoid this penalty, petitioner has the burden of showing that his failure was due to reasonable cause. William M. Bebb, 36 T.C. 170, 173. Ordinarily, petitioner can establish this by showing that he exercised ordinary business care and prudence but nevertheless was unable to file the return timely. Section 301.6651-1 (a)(3), Proced. & Admin. Regs. *218 With regard to the taxable years 1960 through 1962, petitioner persisted in filing his returns in July, after they were due. He has not presented any evidence that there was reasonable cause for his failure to file timely. It is clear that petitioner relied upon his accountants for all of his accounting services including the timely preparations and filing of his tax returns. However, we have held, as we do here, that reliance upon an accountant without other factors justifying delay is insufficient to avoid the penalty 567 under this section. Jane U. Elliott, 40 T.C. 304; Malcolm Clifton Davenport, 6 T.C. 62; and Eagle Piece Dye Works, 10 B.T.A. 1960. For the taxable years 1963 and 1964, petitioner dealt with his accountant and the internal revenue agent who informed him that for the years 1959 through 1962 his income tax returns would be audited using a net worth method. Petitioner and his accountant erroneously believed that the taxable years 1963 and 1964 would be included in any determination made at that time. Therefore petitioner did not file an income tax return for those years. It was not until several months after the due date *219 for each of these years that the agent for the Internal Revenue Service learned of the petitioner's failure to file timely these returns, and it was not until sometime later that the Commissioner's agent indicated that substitute returns would be filed for petitioners. It is not a good defense to this penalty that petitioner and his accountant maintained a bona fide belief that all of petitioner's income tax liabilities would be determined from this audit and that it was unnecessary for petitioner to file income tax returns for the years 1963 and 1964. See Harp v. Commissioner, 263 F. 2d 139 (C.A. 6, 1959), affirming on this point a Memorandum Opinion of this Court. That petitioner in good faith believed this erroneous fact is insufficient to constitute reasonable cause for the delay. J. Hudson McKnight, 3 B.T.A. 1060; Lee Lash Co., 6 B.T.A. 165. We uphold the Commissioner's determination. As indicated above, the Commissioner determined a negligence penalty under section 6653(a). [11] This determination, too, is presumed correct with the burden of refuting it on petitioner. *220 For the years 1959 through 1962, petitioner has failed to present any evidence on which we can find that he was not in fact negligent and we hold he is subject to the addition to tax. Petitioner maintained a daily diary of all his expenditures. This diary was given to petitioner's accountant for posting in a daily journal and the journal was then used by petitioner's accountant to prepare petitioner's tax returns. Most amounts shown on petitioner's records were ultimately included on his tax returns for these years. The diaries (and ultimately the tax returns) included personal expenses consisting of costs for meals and lodging for petitioner while he was present in cities where he maintained personal residences, in addition to other travel expenses that were lavish and extravagant under the circumstances. We have held that where a taxpayer knowingly deducts personal expenses, as business expenses, he is subject to the negligence penalty. Humphrey v. Commissioner, 162 F. 2d 853 (C.A. 5, 1947), affirming on this point a Memorandum Opinion of this Court. We think this is the case here. Both petitioner and his accountant knew or should have known that these costs were *221 personal expenses nondeductible under section 262. [12] Accordingly, because such items were deducted so frequently and were so large, we believe that to claim them as deductions on petitioner's tax return amounted to intentional disregard for the rules and regulations. See Ersel H. Beus, 28 T.C. 1133, affd. 261 F. 2d 176 (C.A. 9, 1958). We hold the Commissioner's determination was proper for the years 1959 through 1962. For the taxable years 1963 and 1964, petitioner failed to file any tax returns and underpayments were a result of this failure. Petitioner relied upon his accountant, who informed petitioner that it would not be necessary to file tax returns for these years. Petitioner attempts to avoid this penalty by claiming that he acted with due care and that his reliance upon his accountant evidenced this. Although reliance upon competent professional *222 advice may in some circumstances prove the taxpayer acted with due care and not willful neglect, and so was not negligent, see e.g. C. R. Lindback Foundation, 4 T.C. 652, affirmed per curiam 568 150 F. 2d 986; Garrett Holding Corporation, 9 T.C. 1029, where professional assistance conflicts with known rules and regulations, reliance upon such advice is not sufficient cause to avoid this penalty. See Journal Co., 46 B.T.A. 841. Petitioner was well aware that he was required to file a tax return annually, however, he relied upon his accountant's advice. Petitioner's adviser erroneously believed that because of the audit by the Internal Revenue Service, petitioner would not be required to file tax returns for 1963 and 1964 but rather the tax due would be included in the audit results. The accountant's belief herein was totally erroneous and casts doubt upon the competency of the advice received. We believe petitioner's reliance upon the advice, under the circumstances herein, is not sufficient to avoid the penalty. Accordingly, for these years, petitioner has failed to overcome the presumption attaching to the Commissioner's determination *223 and we uphold the Commissioner. On brief, petitioner makes no argument that the amounts determined by the Commissioner under section 6654(a) [13] were erroneous. We uphold the Commissioner's determination under this section. [14]
Decisions will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩
2. However, the Commissioner contends that these amounts had already been accounted for in the 30 percent amount allowed by the Commissioner in the notices of deficiency.↩
3. SEC. 162(a). In General - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and * * *↩
4. 1959 1960 1961 1962 Total business expenses deducted on peti- tioner's tax return $40,885.82 $32,365.14 $32,188.65 $21,729.64 Less total business expenses allowed by Com- missioner in the statutory notice of defi- ciency 12,265.75 9,709.54 9,656.59 6,518.89 Total amount in dispute $28,620.07 $22,655.60 $22,532.06 $15,210.75 ↩
5. The oft-cited rule of estimation first espoused in Cohan v. Commissioner 39 F. 2d 540↩.
6. The following is a summary of the expenses recorded in petitioner's daily diaries for 1963: * * Petitioner did not submit into evidence any summary of his daily diaries for 1964. ↩
Room and board
$10,164.93
Airplane fees
24.06
Taxi, bus and auto rental
259.78
Storage, wash, repair-auto
883.72
Gas and oil
258.34
Entertainment
3,102.79
Tips
672.04
Telephone and postage
212.40
Secretarial and other help
393.11
Laundry
29.00
Supplies and miscellaneous
77.30
Donations
616.40
$16,693.87
7. SEC. 6020. RETURNS PREPARED FOR OR EXECUTED BY SECRETARY. (b) Execution of Return by Secretary. - (1) Authority of secretary to execute return. - If any person fails to make any return (other than a declaration of estimated tax required under section 6015 or 6016) required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary or his delegate shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.↩
8. SEC. 274(d). Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.↩
9. In the case of an individual taxpayer, this means deductions allowed in Part VI of Subtitle A, Chapter 1B of the 1954 Code, except those specified in section 62. The following are those amounts found in the Findings of Fact as having been incurred in the following years: ↩
Item
1959
1960
1961
1962
1963
1964
Contributions
$ 650.00
0
$ 611.00
0
$200.00
$20.00
Interest
84.00
0
434.26
0
0
0
Taxes
370.42
$75.13
540.76
0
0
0
Miscellaneous
0
0
0
0
0
60.00
Total
$1,104.42
$75.13
$1,586.02
0
$200.00
$80.00
10. SEC. 6651. FAILURE TO FILE TAX RETURN. (a) Addition to the Tax. - In case of failure to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), of subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extention of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.↩
11. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩
12. This is borne out by the fact that for several years, petitioner's accountant did in fact deduct relatively small amounts from the total expenses so as to exclude from the tax return the personal expenses of petitioner. These amounts were only a fraction of the total of nondeductible items.↩
13. SEC. 6654. FAILURE BY INDIVIDUAL TO PAY ESTIMATED INCOME TAX. (a) Addition to the Tax. - In the case of any underpayment of estimated tax by an individual, except as provided in subsection (d), there shall be added to the tax under chapter 1 and the tax under chapter 2 for the taxable year an amount determined at the rate of 6 percent per annum upon the amount of the underpayment (determined under subsection (b)) for the period of the underpayment (determined under subsection (c)). ↩
14. Petitioner asserts that his tax deficiencies and penalties for the taxable years of 1963 and 1964 should be reduced by the amount that was withheld by McKissack, Inc., and reported on the W-2 forms. It appears petitioner did in fact have taxes withheld for these years for which he was given no credit. The amounts withheld will be taken into consideration under the Rule 50 computation.↩