## POORMAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10090.

Circuit Court of Appeals, Ninth Circuit.

Dec. 4, 1942.

Samuel Poorman, Jr., of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Gerald L. Wallace, Mamie S. Price, and Warren F. Wattles, Sp. Assts. to the Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is a petition for the review of an order of the Board of Tax Appeals, and the sole question is whether a payment of money to the petitioner was a gift under the income tax laws as they were applicable for the taxable year of 1937. Both the Commissioner of Internal Revenue and the Board found the payment to be in the nature of compensation and not a gift.

Petitioner, an attorney at law, was employed on a monthly salary by the Los Angeles Gas and Electric Corporation, hereinafter called the Gas Company, for a period of seventeen years prior to January, 1937. A great part of petitioner's services were in connection with litigation concerning the extent of the right of his employer to use the streets of the City of Los Angeles for pipes, poles, conduits, etc., used in the distribution of gas and electricity to the inhabitants of the City of Los Angeles. In the course of the litigation, negotiations were started and proceeded to a successful termination, through which the Gas Company's electrical business and properties were transferred to the City, as of January 31, 1937. Petitioner took no part in these negotiations, although it is highly probable that the franchise litigation greatly influenced the final agreement of sale.

After the transfer took place, a number of the Gas Company's employees, including petitioner, were transferred to the employment of the City. When petitioner left the employment of the Gas Company, his monthly stipulated salary had been paid in full, the last payment check having attached, a voucher with the following statement:

"Statement of Account. In full settlement of which Payee has accepted Los Angeles Gas and Electric Corporation check annexed hereto. Samuel Poorman, Jr., January 30, 1937. Services as attorney during month of January, 1937, * * * $1,000.00. Payee will please detach and retain this statement."

A "Uniform Pension and Benefit Plan" for the employees of the Gas Company had been in operation for a considerable period of time and was supported by a percentage of salary paid by employees to be used solely to provide a portion of the total retirement figure. The Gas Company contributed to and administered the plan.

Recognizing that the sale and consequent changes of employer affected petitioner and others, the Gas Company, in writing, notified them that their membership in the Uniform Pension and Benefit Plan was terminated and checks would be forthcoming for the amounts of their several contributions to it.

Also, a letter, dated January 25, 1937, signed by the president and manager of the Gas Company, was sent to the same persons, the applicable part of which we quote as follows:

"You are all familiar with the recent events which have resulted in the sale of our electric properties to the City of Los Angeles, and which will make it necessary that the people who operate these properties sever their relations with Los Angeles Gas and Electric Corporation.

"At this time and just before the transfer is completed, I want to express to you all my very great appreciation of the splendid service you have rendered during the past many years, and of the fine support you have given to me and to our management generally in the conduct of our electric business. I have been very happy indeed because of the good-fellowship and spirit of friendliness which has always existed between us, and regret more than I can tell you the conditions which make it impossible for us to continue working together.

"Arrangements have been made to grant you additional compensation in recognition of the value of your past services. The amount of this payment will be based upon your present attained age, your length of service with the Company, and the rates of wages received during your period of employment; but this extra compensation will not be paid to employees whose 'employment date' is more recent than September 1, 1934. Checks will be mailed to you as soon as possible after our electric properties have passed to the City."

On or about the day these notices were received, petitioner had a conversation with the president of the Gas Company, in which the president said in effect that petitioner's work with the company was finished; that he was to be transferred to the City as an employee; that Pacific Lighting Corporation, which held all the Los Angeles Gas and Electric Corporation common stock, had arranged for the giving of a "bonus" to those to be so transferred. Quoting petitioner directly from the Record, he said: "He [the president] made no mention of the payment being additional compensa-

tion, but he did say that it was in recognition of my fine work in the franchise cases."

Sometime thereafter, petitioner received a check which was in all respects in accordance with an attached voucher, which read as follows:

"Additional compensation for services to and including January 31, 1937, in accordance with the President's letter of January 25, 1937. No. 26, Total amount, $8,491.34. Deductions, Federal O. A. B., $20. State, U. I., $76.42. Net amount, $8,394.92. This statement constitutes a valuable record of your earnings and the contributions you have made toward future social security benefit. We recommend that you keep it for your further reference. Los Angeles Gas & Electric Corporation, detachable for presenting for payment."

This payment to petitioner and other payments of like import were entered on Gas Company's ledger under "Sale of Electric Properties, Suspense Account", and the Gas Company's president testified that the payment to petitioner was not entered as ordinary operating charges for the reason that it was "so definitely not ordinary operating expenses; it would never have been made except for the sale of the electric properties or some other abnormal or extraordinary transaction." The sum of all of the payments in this respect was deducted from the sales price received for the sale of the properties to the City in the Gas Company's tax returns.

The applicable part of the statutes which govern are, Revenue Act of 1936, c. 690, 40 Stat. 1648:

"§ 22. Gross Income

"(a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid. * * *

"(b) Exclusions from Gross Income. The following items shall not be included in gross income and shall be exempt from taxation under this title:

*   *   *   *   *   *

"(3) Gifts, bequests, and devises. The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income);" 26 U.S.C.A. Int.Rev.Acts, page 825.

Petitioner bases his contention that the money paid him was a gift and therefore was not required by law to be reported in his gross income and supports his claim upon the facts related and relies heavily upon the facts that each month he was paid in full and that the statements of the president of the Gas Company that he had served well and would be paid a bonus and did not mention the idea that further compensation was to be paid him. In fact, petitioner conceded in his oral argument to us that unless the statements of the president meant a gift and not compensation, he could not prevail. As authority for his position, he relies upon Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 65, 82 L.Ed. 32, hereinafter referred to as the Bogardus case.

We shall proceed to analyze the Bogardus case.

The Universal Oil Products Company was incorporated in 1914, with only an application for a patent, and by 1931, it sold out to United Gasoline Corporation for $25,000,000.00. Just prior to this sale, Unopco Corporation was organized and acquired from Universal certain assets valued over $4,000,000.00. All stockholders of Universal as of date prior to the sale to United became stockholders in Unopco in the same proportion. None of these remained stockholders in Universal.

Shortly after these transactions, Unopco held a meeting at which it was proposed and the Board of Directors passed a resolution appropriating a large sum of money to a number of former and present employees, attorneys and experts of Universal, including Bogardus, in recognition of their valuable and loyal services. Some of the recipients had been out of the employ of Universal for many years; and one of them was a sister of an employee killed in an explosion about 1910. None was or ever had been employed by Unopco.

At the Unopco meeting, the president stated that the stockholders of Unopco had met with great good fortune in Universal, starting with nothing. That through struggling years, employees had given loyal support; that it would be a "nice and generous" thing to show appreciation by a "gift or honorarium". All acquiesced and it was understood as the president stated "that we [the stockholders] would come forward and make these presents or gifts * * *." It was stipulated that neither Universal nor United nor Unopco owed any of the recipients any legal or other obligation to pay

any compensation in addition to that paid them prior to the payments under consideration. None of the corporations mentioned in the Bogardus case claimed any deduction for income tax purposes in respect of the payments made.

The court held that "The whole tone of the meeting [at which the payments were determined upon] indicates that the intention was to make gifts in recognition of, not payments for, former services." And the order was in accord with this statement.

The distinguishing features between the cited and the instant cases are markedly discernible. The voucher attached to the check for the payment to petitioner designates it as "additional compensation", and the president's letter states "arrangements have been made to grant you additional compensation in recognition of the value of your past services". In the cited case, the payment is designated a "bonus", a "gift", an "honorarium", "a nice and generous thing to show appreciation". The amount of money paid petitioner herein was calculated upon a basis of salary received before severance of the employer relation. In the cited case, there is no basis shown for the sums paid and there is no evidence from which it could be deduced that the sums paid had any relation to the severance of employment. Some recipients in that case had not worked for the company for years; one never had been an employee, but was the sister of a deceased employee. The payment to petitioner was made following severance of long, steady employment, made necessary because of the sale of the electrical properties of the payor. The payor took deduction upon its income tax return for the amount paid to petitioner, while no such deduction was made or claimed in the cited case.

The sale of the electrical properties disturbed and interrupted the continuance of a pension plan, designed to cover long and continuous service of the recipient, into the upkeep of which the petitioner herein had contributed, together with all other like recipients, a percentage of his monthly salary, and toward the maintenance and administration of which payor had assumed obligations. However, the sums contributed by all of the beneficiaries of the pension plan, who were separated from it, were repaid to them. Nothing whatever of this nature is present in the cited case.

■ The order in this case being one of mixed law and fact, we can review it by applying our own view of the law. As to the facts, we think there is no conflict between the majority opinion and the dissenting opinion in the Bogardus case as to the correctness of the following statement found in the dissenting opinion: It was for the triers of the facts to seek among competing aims or motives the ones that dominated conduct. * * * If there was opportunity for opposing inferences, the judgment of the Board controls."

■ Here, we are not the triers of the facts with full power to weigh the evidence and select among divergent inferences drawable from the facts which inference or which combination of inferences is the proper one. If from supported findings of fact an inference is drawable in support of the Board's conclusions, we have no alternative, we must affirm the order based thereon. See Commissioner of Internal Revenue v. Boeing, 9 Cir., 106 F.2d 305, 309.

■ To summarize, it will be recalled that the president of the Gas Company told petitioner that he had served well and that he would be paid a bonus. That a bonus is not a gift is well treated in Levey v. Helvering, 62 App.D.C. 354, 68 F.2d 401.

■ That a legal obligation is not necessary to constitute payment compensation for services, see Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918. That payment of an additional sum by an employer to an employee carries a strong presumption that it is for services rendered, see Bass v. Hawley, 5 Cir., 62 F.2d 721. That the salary paid petitioner was the "measuring rod" for the fixing of the additional payment is some evidence that it was compensatory in nature, see Willkie v. Commissioner, 6 Cir., 127 F.2d 953. That payor took deduction in its income tax return of the amount paid over and above salaries is some indication that it intended the payments as compensatory, see Noel v. Parrott, 4 Cir., 15 F.2d 669, certiorari denied, 273 U.S. 754, 47 S. Ct. 457, 71 L.Ed. 875, and Willkie v. Commissioner, supra.

■ Viewing the case as a whole, we think the following paraphrase of a quotation from the Bogardus case hereinbefore used is appropriate. The whole tone of the situation in the instant case indicates it was

the intention of the Gas Company to make the payment, not as a gift, but as additional compensation for services performed in the light of the circumstances which compelled the severance of employee from his employer with its consequential harmfulness to the employee.

The facts of the case, not only justified the inferences and the conclusions of the Board, but compelled them.

Affirmed.