ESTATE OF R. L. LANGER, DECEASED, ELEANORE LANGER, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELEANORE LANGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

C. ABBOTT LINDSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PAULINE LINDSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 16756, 16757, 18396, 18397. Promulgated January 12, 1951.

*Austin H. Peck, Jr., Esq.,* for the petitioners.
*L. C. Aarons, Esq.,* for the respondent.

OPINION.

JOHNSON, *Judge:* The Court of Appeals for the Ninth Circuit determined in *Estate of Langer* v. *Commissioner*, 183 Fed. (2d) 758, reversing 13 T. C. 419, that the deferment in payment of the amounts of back salary here in question was caused by an event similar to receivership within the requirement of section 107 (d) (2) (A),

Internal Revenue Code, contrary to the contention of respondent and to our prior holding. Respondent, however, also contends that section 107 (d) is not applicable because the employer was under no obligation to pay in prior years, and because the payments were less than 15 per cent of petitioners' gross incomes, which he says should be computed to comprise receipts undiminished by the expenses of businesses from which they derived income. Pursuant to mandate we now consider these contentions, which we found it unnecessary to consider under our prior holding.

Respondent points out that under Regulations 111, section 29.107–3, "back pay" does not include "additional compensation for past services when there was no prior agreement or legal obligation to pay such additional compensation  *  *  *." He maintains that except as to part of the year 1937, petitioners' salaries were authorized retroactively by the board of directors of the Commodore Hotel Company on January 3, 1944, that there was no prior agreement or legal obligation to pay such salaries, and that the resolution of the board of directors of April 14, 1937, that salaries of $600 a month be paid Langer and Lindsey from January 1, 1937, and "every month hereafter" was intended for 1 year only. Petitioners maintain that the 1937 authorization was a continuing one and extended beyond the year.

We think the facts clearly support petitioners on this issue. The salaries were voted in 1937 and we do not understand the resolution to cover only 1937, especially in view of the phrase "every month hereafter." But whatever period the resolution covered, the presumption is that petitioners' services after 1937 were not gratuitous and that the parties intended the same compensation. As said in 6A Cal. Jur. 1125:

> If an officer is hired at a fixed salary and continues in the same employment after expiration of the term of his original hiring without a new contract, it is presumed that the parties intend the same compensation.

See also, Fletcher, Cyclopedia of Corporations, Vol. 16, pp. 440–41; *Caminetti* v. *Prudence Mut. Life Ins. Assn.*, 62 Cal. App. (2d) 945, 146 Pac. (2d) 15; *Perry* v. *Noonan Furniture Co.*, 8 Cal. App. 35, 95 Pac. 1128. The facts show that the Commodore Hotel Company failed to pay salaries from 1937 to 1942 because it was not able to do so, not because it was not liable to do so. The 1944 authorization recognized that there were owing to the officers specific amounts of back salary for 1937, 1938, 1939, 1940, 1941, and 1942. In other words, the 1944 authorization was not a retroactive authorization but a recognition of a liability that already existed, and it merely directed the satisfaction of that liability as soon as possible. The fact that the corporation paid the back salaries without approval of the

Salary Stabilization Unit of the Treasury after being informed by the latter that it could do so without approval only if "there was a bona fide contractual liability on October 3, 1942," also supports our conclusion that such a liability existed. We can not assume that the corporation violated the law.

Respondent also contends that petitioners have failed to meet the requirement of section 107 (d) that in order for a taxpayer to be entitled to the benefits of that section, the amount of back pay received or accrued during the taxable year must exceed 15 per cent of the taxpayer's gross income for that year. Petitioners contend that only the net profits derived from the operation of the Commodore Cafe in 1944 and 1945, i. e., gross receipts less cost of goods sold and other business deductions, are includible in the gross incomes of the Lindseys in 1944 and 1945 for purposes of section 107 (d). They concede that "if gross receipts are to be used in determining the percentage under section 107 (d), the Lindseys are not entitled to the relief which they have claimed. Likewise, if gross sales, less cost of goods sold, is the correct figure, the relief is lost." In effect, they are claiming that the adjusted gross incomes of the Lindseys in 1944 and 1945, which include only net profits from business, should be the figures upon which the 15 per cent should be computed for purposes of section 107 (d).

We disagree. The statute plainly says "gross income," not "adjusted gross income." Whenever Congress has intended a percentage to apply to "adjusted gross income," it has said so, as in the allowance for charitable contributions under section 23 (o), or for medical expenses under section 23 (x). Similarly, when it has intended a percentage to apply to "gross income," as in section 275 (c), it has also said so. We can not therefore impute an intention on the part of Congress to refer to "adjusted gross income" in section 107 (d) when it has plainly said "gross income."

In defining "gross income from business," section 29.22 (a)-5 of Regulations 111 provides:

In the case of a manufacturing, merchandising, or mining business, "gross income" means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources. In determining the gross income subtractions should not be made for depreciation, depletion, selling expenses, or losses, or for items not ordinarily used in computing the cost of goods sold.[1] * * *

The back pay received by Lindsey of $10,000 in 1944 and $11,500 in 1945, allocable half to his wife, not being more than 15 per cent of the gross incomes of the Lindseys of $101,569.40, or $50,784.70 apiece,

---

[1] This fundamental concept of "gross income" from business as gross receipts less cost of goods sold has stood unchallenged for many years. See Mim. 2915 and I. T. 1241, I-1 C. B. 233, 234.

in 1944, and $118,058.54, or $59,029.27 apiece, in 1945, computed to include gross receipts from the Commodore Cafe less cost of goods sold, they are not entitled to the relief of section 107 (d).

As for the Langers, the other petitioners herein, the facts show that they reported income in 1944 from the operation of the Clifton Hotel and the Figueroa Hotel. In' each hotel the interest of the Langers was 50 per cent. The other owners of the Clifton Hotel were Nelda Clinton, who owned 37½ per cent, and Mary R. Brown, who owned 12½ per cent. The other owners of the Figueroa Hotel were Clifford E. Clinton, who owned 37½ per cent, and R. N. Callicott, who owned 12½ per cent. The Langers reported on the schedules of their 1944 returns the gross receipts from these two hotels, but they brought forward to the face of the returns only their 50 per cent share of the net profits from each hotel, i. e., gross receipts less business expenses less the 50 per cent share of the net profits apportioned to the other owners. Petitioners contend that only this net amount is includible in the Langers' gross income for purposes of section 107 (d). They maintain that these two hotels were operated by the Langers and the co-owners as joint ventures. They point out that if the joint ventures had filed partnership returns as they should have,[2] the business expenses of the joint ventures would have been deducted on the partnership returns and only the Langers' distributive share of the net profits from these ventures would have been reported on their individual returns.

Respondent does not question the division of the income from these hotels between the Langers and their co-owners, and he concedes that if partnership returns had been filed, he would not question the Langers' inclusion of only their share of the net profits from such ventures in their individual gross incomes for purposes of section 107 (d). But he maintains that in view of the failure to file partnership returns petitioners can not now contend that these were joint ventures and compute the Langers' individual gross incomes as though partnership returns had been filed.

We do not agree. The determination of whether or not an undertaking is a joint venture or partnership does not depend on whether or not a partnership return was filed, and respondent gives no other reason for challenging the existence of these joint ventures. We have

---

[2] INTERNAL REVENUE CODE.

SEC. 3797. DEFINITIONS.

(a) When ued in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\* \* \* \* \* \* \*

(2) PARTNERSHIP AND PARTNER.—The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.

found on the facts that joint ventures did exist between the Langers and their co-owners in the operation of the Figueroa and Clifton Hotels in 1944. Accordingly, partnership returns should have been filed and the Langers are entitled to include, as they did, in their gross incomes for 1944 only their distributive shares of the net profits of the joint ventures. The $10,000 in back pay received by Langer in 1944, allocable $5,000 to him and $5,000 to his wife, constituted more than 15 per cent of their gross incomes ($30,729.45 for Langer and $31,854.43 for his wife) so computed, and, being otherwise within the provisions of section 107 (d), Internal Revenue Code, petitioners Estate of R. L. Langer and Eleanore Langer are entitled to the benefits of that section with respect to that back pay.

*Decisions will be entered under Rule 50.*