EDWARD F. WEBBER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LELIA VESTA WEBBER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD F. WEBBER AND LELIA VESTA WEBBER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47596, 47597, 47598. Promulgated February 25, 1954.

---

*Charles E. Brace, Esq.*, for the petitioners.
*John P. Higgins, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined deficiencies in income tax as follows:

| Year | Edward F. Webber Docket No. 47596 | Lelia Vesta Webber Docket No. 47597 | Edward F. Webber and Lelia Vesta Webber Docket No. 47598 |
|------|------|------|------|
| 1946 | $1,454.26 | $1,416.26 | |
| 1947 | 1,509.08 | 1,566.08 | |
| 1948 | 1,456.37 | 1,532.59 | |
| 1949 | | | $2,929.92 |
| 1950 | | | 7,140.66 |

The issues for decision are (1) whether a portion of the amounts received from radio listeners were gifts rather than taxable income and (2) whether the statute of limitations barred assessment of any of the deficiencies.

The facts have been presented by a stipulation which is adopted as the findings of fact.

The petitioners, husband and wife, residing in Oklahoma, filed their returns with the collector of internal revenue for the district of Oklahoma. Those were separate returns for 1946, 1947, and 1948 and joint returns for 1949 and 1950.

Edward, an ordained minister in the Methodist Church, conducted nonsectarian religious programs over the radio, assisted by Lelia in music and poetry. They received funds from listeners in response to announcements, requests, and solicitations made on the programs. They classified all contributions thus received into the following categories:

A. For support of radio program.
B. For support of missions, or relief funds.
C. Undesignated contributions.
D. For sale of Bibles, books, etc.
E. For Edward F. and Lelia Vesta Webber personally.

Category A, less offsetting deductions, was reported as taxable income; category B was sent to the missions or relief designated and was not reported on returns; category C was reported in full as taxable income;

category D, less offsetting deductions, was reported as taxable income; category E was not reported as taxable income.

‧ The average gross receipts in each. category during the 5 taxable years were: A, $85,386.58; B, $46,331.49; C, $17,531.50; D, $1,845.32; and E, $10,180.80. The programs on Mondays through Fridays prior to November 1, 1947, were for 15 minutes and thereafter were for 30 minutes each. The Sunday programs were for 30 minutes. The number of stations varied from 6 to 9 and were located in Oklahoma, Texas, Kansas, Iowa, and Arkansas. The total time purchased each week ranged from 8 hours 37 minutes in 1947 to 18 hours 31 minutes in 1950 and averaged over the 5 years 12 hours 28 minutes each week.

The Commissioner, in determining the deficiencies, included in income the amounts classified in category E and the first issue is whether he erred because those amounts were gifts and, therefore, nontaxable as income. Section 22 (a) of the Code is in part as follows:

"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

Section 22 (b) excludes "gifts" from gross income and exempts them from tax.

The petitioners contend that the amounts they classified under category E were personal gifts to them and therefore not taxable income. The evidence as to how those amounts were put in category E is merely that the petitioners opened all mail containing responses from listeners and classified in category E "The contributions designated for E. F. and Lelia Vesta Webber personally." What kinds of statements were recognized by the petitioners as sufficient designation for the purpose are not shown. The persons sending the money were strangers who had no contact or acquaintance with the petitioners except as listeners to their radio programs.

The petitioners, in putting on the radio programs, were conducting a business for profit as their principal means of earning a living. They asked their listeners, in the course of the programs, to send in money to the petitioners. They used a part of the money to pay the expenses of their business, including the cost of the radio time, and they kept the rest to compensate themselves for their personal efforts in putting on the programs.[1] There is no indication that the

---

[1] The petitioners acted as a conduit for other money which listeners contributed to missions and relief. The Commissioner concedes that they passed that money on to others for whom it was intended. That money did not belong to and was not taxable income of the petitioners. It has no bearing on this issue.

petitioners failed to make clear, in their solicitation of funds, the necessity for funds to ensure continuation of the programs. Such funds would include expenses and adequate compensation for the petitioners. Those who sent money to the petitioners were under no legal obligation to send the money but, apparently, enjoyed the programs, wanted them to continue, and were moved by some moral obligation or desire to compensate the petitioners and enable them to continue their broadcasts. That was the way the business was expected to operate and earn money for the petitioners. A legal obligation on the part of the payor is not necessary to constitute the payment income to the recipient. *Poorman v. Commissioner*, 131 F. 2d 946, affirming 45 B. T. A. 73.

The evidence does not show that any listener intended his money as a gift to the petitioners personally rather than as compensation for their services, past or future. Cf. *Bass v. Hawley*, 62 F. 2d 721; *Poorman v. Commissioner, supra.* Nor does the evidence that more was allocated to category E in August, Edward's birth month, and in December, show that those amounts were nontaxable birthday and Christmas gifts rather than taxable income. All amounts received in the regular course of their business and classified by the petitioners under categories C and E were theirs alone, compensation for their services and a part of their gross income under section 22 (a).

A relatively small part of the business was the sale of Bibles and other books. The petitioners subtracted the cost of the merchandise from the gross receipts and properly reported the excess as gross income. That gross income is not in dispute.

The remaining issue is whether the statute of limitations barred assessment of the deficiencies for 1946, 1947, and 1948 when the notice of deficiency was mailed. The returns for each of those years were filed on March 15 of the following year. The 3-year period for assessment fixed by section 275 (a) had expired as to each of those years before the notices of deficiencies for those years were mailed on January 7, 1953. Edward filed a consent within the 3-year period extending the period for assessment of his taxes for 1948 to June 30, 1953, and, consequently, the deficiency against him for that year can still be assessed and collected. The Commissioner alleges and has the burden of proving that Edward's returns for 1946 and 1947 and Lelia's returns for 1946, 1947, and 1948 omitted gross income in excess of 25 per cent of that reported and the 5-year period of section 275 (c) applies. *C. A. Reis*, 1 T. C. 9.

One of his arguments in that connection is that the amounts in category B, for missions and relief, were properly includible in gross income. There is no merit in that argument. The Commissioner did not include those amounts in gross income in determining the deficiencies, they did not belong to the petitioners but were contributed

by others to missions and relief, the petitioners acted only as forwarding agents and "scrupulously applied" the funds to the designated purposes.

The Commissioner's only other argument on this issue is that the amounts in category A, for support of radio program, were gross receipts and only the excess over "the direct costs of the radio programs" was gross income. Section 29.22 (a)–5 of Regulations 111 provides for the subtraction of cost of goods sold to arrive at gross income "In the case of a manufacturing, merchandising or mining business" but such costs do not include "depreciation, depletion, selling expenses, or losses, or * * * items not ordinarily used in computing the cost of goods sold." See also *Woodside Acres, Inc.*, 46 B. T. A. 1124, affd. 134 F. 2d 793; *Garrett Holding Corporation*, 9 T. C. 1029; *Lela Sullenger*, 11 T. C. 1076; *Estate of R. L. Langer*, 16 T. C. 41, 46, affirmed per curiam 194 F. 2d 288; *Ray Edenfield*, 19 T. C. 13, 19, and 22. The returns provide for the subtraction of cost of goods sold at one place and for the deduction of expenses of the business at another. Cf. Regs. 111, sec. 29.23 (a)–1. Section 29.22 (a)–5 does not apply to that part of the business of the petitioners in which they received the amounts for the support of their radio programs since in that business they sold nothing and merely furnished their personal services to those who chose to listen. The Commissioner has cited no authority that something known as "the direct costs" of such programs must be subtracted in a case like this, he has not shown what such "direct costs" would include, and he has not shown the amounts of the "direct costs" to which he refers in this case. He apparently refers to some items shown on schedules attached to the returns but the Court, without testimony or other evidence explaining the items, would not know that any item therein should be subtracted from gross receipts rather than deducted from gross income. Accountants' Handbook, 2d Ed., p. 1077–8. Cf. *Leslie A. Sutor*, 17 T. C. 64, 67.

The Commissioner has failed to show that section 275 (c) has any application and it follows that the assessment and collection of the deficiencies for 1946, 1947, and 1948 against Lelia and the deficiencies for 1946 and 1947 against Edward were barred when the deficiency notices for those years were mailed.

*Decisions will be entered under Rule 50.*