ROY P. VARNER AND MARY A. VARNER, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Varner v. Commissioner
Docket Nos. 3425-71, 3426-71, 3427-71.
United States Tax Court
T.C. Memo 1973-27; 1973 Tax Ct. Memo LEXIS 258; 32 T.C.M. (CCH) 97; T.C.M. (RIA) 73027; February 6, 1973, Filed Robert E. McDuff and Frank D. Holcomb, for the petitioners. Frank Simmons, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in the income tax liability of the petitioners for the taxable years 1964 to 1967, inclusive, as follows: Docket No.
1964
1965
1966
1967 3425-71
$6,238.66
$319.53
$40.24
$ 151.67
3426-71
4,352.01
15.88
18.67
101.07
3427-71
2,437.50
12.76
12.15
85.68 2 The issue remaining for decision is whether the nonrecognition of gains provisions of section 1033, Internal Revenue Code of 1954, [2] are applicable where the actual reinvestments were made individually rather than by a partnership. The answer depends upon whether the business venture entered into by petitioners was a partnership so as to require an election by that partnership under section 703 in order *260 for the benefits of section 1033 to apply. FINDINGS OF FACT Some of the facts have been stipulated; they are so found and incorporated herein by this reference. During the taxable year 1964, and at the time of filing their petition herein, petitioners Roy P. Varner and Mary A. Varner were residents of Marietta, Georgia. They filed their joint Federal income tax return for the taxable year 1964 with the district director of internal revenue, Atlanta, Georgia. During the taxable year 1964, and at the time of filing her petition herein, petitioner Mrs. J. L. (Ione J.) Varner was a resident of Marietta, Georgia. She filed her Federal income tax return for the taxable year 1964 with the district director of internal revenue, Atlanta, Georgia. During the taxable year 1964, and at the time of filing their petition herein, petitioners William B. Carson and Evelyn V. Carson were residents of Greenville, Georgia. 3 They filed their joint Federal income tax return for the taxable year 1964 with the district director of internal revenue, Atlanta, Georgia. In 1956 or 1957 *261 the stockholders of Varner-Meek Corporation (Varner-Meek) organized Carson-Thomas Corporation (Carson-Thomas or the corporation) and became its sole shareholders. Each Varner-Meek stockholder gave up a stated percentage of his Varner-Meek stock in exchange for Carson-Thomas stock. Land (hereinafter sometimes known as the property) owned by Varner-Meek was then conveyed to Carson-Thomas. A grill, known as Varner's Grill, and operated by Paul J. Varner, was located on a portion of the Carson-Thomas property. Carson-Thomas leased the grill to Paul J. Varner by written lease for $600 per month. During the period that the grill was owned by Carson-Thomas repairs to the grill and real estate taxes were paid by Carson-Thomas. On November 5, 1962, Carson-Thomas conveyed its property to petitioners and others. Each interested party received his fractional interest in real estate by means of a deed. The deed contained the names of each party receiving interest in the real estate and specifically stated the fractional interest that each received. On November 30, 1962, Carson-Thomas surrendered its charter. At this time the stockholders of Carson-Thomas had knowledge that Interstate Highway *262 75 was planned to go 4 through their property. When Carson-Thomas surrendered its charter the corporation owned assets with the following bases: Land - Part I
$13,716.80
Land - Part II
41,150.40
Paving - Varner's Grill
952.08
Paving - Parking area
493.81
Sign - Varner's Grill
124.22
Landscaping
55.02
Building - Grill (less mortgage of $3,893.63)
8,493.79
$64,986.12
Petitioners received the following percentages of the property when it was deeded from Carson-Thomas to the petitioners and others on November 5, 1962: Roy P. Varner
19.21%
Mrs. J. L. (Ione J. Varner)
18.18%
William B. Carson and Evelyn V. Carson
10.83%
Two powers of attorney were given to Roy P. Varner (Roy) by the petitioners and others shortly after the corporation was extinguished. The first gave him the power to collect rents, pay taxes and insurance, and deal generally with the property received from Carson-Thomas upon its dissolution. The second authorized him to represent the parties in any condemnation proceedings involving the aforementioned property. The powers granted to Roy by the first power of attorney allowed him to operate the property in the *263 same manner as it has been operated while owned by Carson-Thomas. There was never a partnership agreement entered into by the parties. 5 Between the dissolution of Carson-Thomas and the condemnation order of the State Highway Department of Georgia, Roy, as representative of all of the petitioners, managed three business transactions involving the property. He continued to rent the grill to Paul J. Varner and continued the operation of the property in the same manner as the property had been operated while owned by Carson-Thomas. In addition, he leased a small piece of property to a go-kart operator who built and operated a go-kart track for a short period of time, and he leased space for about one week to Oral Roberts for a tent meeting. The go-kart activity and the Oral Roberts meeting did not require any services. He carried out activities regarding the property such as the payment of taxes, the collection of rent, and the maintenance of insurance. Several times he notified the insurance company to come out and replace certain broken items in the grill. Roy monitored approximately 100 tracts of property for tax purposes for himself, his family, and others. In order *264 to differentiate and better administer the petitioners' property he termed the property "Roswell Road Properties" and maintained a set of books and a bank account for the property under that name. Money collected from the operation of the property was deposited in this account. Expenses and taxes incurred by the property were paid from the Roswell 6 Road bank account. The Roswell Road Properties' general ledger maintained under Roy's supervision contained separate accounts for each petitioner. Roswell Road Properties' partnership income tax returns, prepared from the Roswell Road Properties' set of books, were filed for the years 1962 through 1967. These returns listed as partners the same persons who were stockholders in Carson-Thomas. Returns for a portion of those years were prepared by Holcomb & McDuff, attorneys, who are the petitioners' counsel of record in the instant case. The Georgia State Highway Department condemned a portion of the property in a condemnation action of September 1, 1964. The proceeds of the condemnation were collected directly by Fred D. Bentley, an attorney, who represented the individuals holding fractional interests in the real estate.
*265 The proceeds from the said condemnation were distributed by Fred D. Bentley to the individuals in ratio to their respective ownership in the property as was specified in the deed to them at the time of their acquiring the property. From the proceeds of the condemnation received by Roy replacement property was purchased from $120,000. 7 Petitioner Mrs. J. L. (Ione J.) Varner purchased real property from her condemnation proceeds in two tracts, one for $21,000 and the second for $17,325. Petitioner Evelyn V. Carson purchased certain real property from Jerry Binder Hill on May 2, 1964, for $18,000 in contemplation of condemnation. Individual income tax returns (Forms 1040) were prepared for the petitioners for the taxable year 1964 by the petitioners' counsel of record in the instant case. All of the petitioners' individual returns reflect the receipt of money from condemnation proceedings as follows: Receipts from Roswell Road Properties, a Partnership, for land sold during 1964 under condemnation proceeding [Emphasis added] As late as 1968 Roy signed Form 875, "Acceptance of Examining Officer's Findings by a Partnership, Fiduciary, or Small Business Corporation" *266 as a partner. Roswell Road Properties did not make an election to defer recognition of the long-term capital gain from the condemnation sale of property to the Georgia State Highway Department and did not replace the property. In their individual income tax returns for 1964, petitioners elected to defer recognition of the long-term capital gain from the condemnation sale of property. Respondent increased the petitioners' taxable income on the basis that no election under section 1033(a) (3) (A) 8 for replacement of property was made by the partnership, Roswell Road Properties, in accordance with section 703(b). OPINION Section 1033(a)[3] provides that if property is compulsorily or involuntarily converted into money and if the 9 taxpayer purchases other property similar to the property converted, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon the conversion exceeds the cost of the other property. Section 761[4] defines a partnership for purposes of the Internal Revenue Code, and section 703(b) [5] provides, with *267 certain exceptions, that elections which affect the computation of taxable income derived from a partnership shall be made by the partnership. The election required by section 1033 is one which must be made by the partnership. See Mihran Demirjian, 54 T.C. 1691 (1970), affd. 457 F.2d 1 (C.A. 3, 1972). *268 10 The question before this Court is whether Roswell Road Properties, composed of petitioners and other taxpayers, was a partnership during the taxable year 1964. If we answer this question affirmatively, petitioners are precluded from the benefits of section 1033 because of the partnership's failure to elect these benefits. As revealed by respondent's own regulations, [6] "A twilight zone separates co-ownership of property from joint ventures or partnerships." Cruikshank, "Are co-owners partners? Code raises doubts; electing exclusion urged," 15 The Journal of Taxation 166 (1961). There is a plethora of case law which attempts to better define that twilight zone. The case law in the area serves to fulfill the prophecy of Estate of Edgar S. Appleby, 41 B.T.A. 18, 21 (1940), *269 affd. 123 F.2d 700 (C.A. 2, 1941), that "it will probably continue to be difficult to classify many of the imaginable varieties 11 of businesses and interests in which more than one person share." In making a determination as to partnership existence, "the question is * * * whether, considering all the facts * * * the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." Commissioner v. Culbertson, 337 U.S. 733, 742 (1949). [7]
There are many objective tests which have been used as judicial guideposts in the area. See 6 Mertens, Law of Federal Income Taxation, sec. 35.03, p. 16; Hubert M. Luna, 42 T.C. 1067, 1077-78 (1964); and George Rothenberg, 48 T.C. 369, 373 (1967). *270 No single one of the various objective factors is conclusive of the existence of a partnership. See Mihran Demirjian, supra.In the case at bar there are factors favoring both parties' contentions; however, based on the record as a whole we are convinced that petitioners intended to carry on a business as a partnership and that there was sufficient business activity to justify a finding that a partnership did indeed exist. 12 One element in respondent's favor is the fact that the petitioners continued, without any break in continuity, an active rental business which had been conducted in corporate form. See Mihran Demirjian, supra; and O. C. Lee et al., 6 B.T.A. 541 (1927), affd. sub nom. Carr v. Commissioner, 28 F.2d 551 (C.A. 5, 1928). They continued the business in the same manner customer; moreover, the same party handled all of their managerial functions. The amount and types of income and expenses indicated that the operation constituted a more active rental business than the mere holding of property for investment. See Leland Hazard, 7 T.C. 372 (1946); and John D. Fackler, 45 B.T.A. 708 (1941), *271 affd. 133 F.2d 509 (C.A. 6, 1943). They provided certain services to the occupants and the fact that the services were provided through a single partner does not at all detract from the existence of a partnership. See J. Sterling Halstead, T.C. Memo. 1960-106, affd. per curiam 296 F.2d 61 (C.A. 2, 1961); and Beck Chemical Equipment Corporation, 27 T.C. 840 (1957). The petitioners revealed their intention to consider Roswell Road Properties a partnership on more than one occasion. On their own individual returns (Form 1040) for the year 1964, petitioners reflected the receipts from the condemnation sale in the following manner: 13 Receipts from Roswell Road Properties, a Partnership, for land sold during 1964 under condemnation proceeding [Emphasis added] Furthermore, Roswell Road Properties filed Federal income tax returns as a partnership from 1962 through 1967. We recognize the fact that the determination of whether or not a partnership existed does not depend substantially on whether or not a partnership return was filed. See Estate of R. L. Langer, 16 T.C. 41 (1951), affd. per curiam 194 F.2d 288 *272 (C.A. 9, 1952); Lena Hahn, 21 T.C. 212 (1954); and Greenspon v. Commissioner, 229 F.2d 947 (C.A. 8, 1956), affirming in part 23 T.C. 138 (1954). However, when an entity files partnership returns, is itself referred to as a partnership by the partners in their own individual returns, and conducts an established business operation, this is strong evidence that the parties considered such an operation to be a partnership. There is an established procedure which a partnership must resort to in order to enjoy the benefits of section 1033. In the absence of a convincing showing that a partnership did not indeed exist, we are hesitant to let the petitioners claim the benefits of partnership income reporting during the entire existence of the business operation and then disclaim their partnership status when it no longer suits them. 14 We can find no case law in the circuit to which this decision would be appealed which directs that the filing of a partnership return in certain circumstances estops the purported partners from claiming otherwise; cf. *273 Haag v. Commissioner, 59 F.2d 514 (C.A. 7, 1932), affirming 19 B.T.A. 982 (1930). However, in the present case the petitioners have not disproven the existence of a partnership and it is highly appropriate to bind them to the representations they made to the Internal Revenue Service. The Bureau of Internal Revenue, with the tremendous load it carries, must necessarily rely in the vast majority of cases on what the taxpayer asserts to be fact. The burden is on the taxpayer to see to it that the form of business he has created for tax purposes, and has asserted in his returns to be valid, is in fact not a sham or unreal. If in fact it is unreal, then it is not he but the Commissioner who should have the sole power to sustain or disregard the effect of the fiction since otherwise the opportunities for manipulation of taxes are practically unchecked. That which best serves the purpose of the tax statute should govern in this field and not the yearly exigencies of this taxpayer. * * * [Malentis v. United States, 200 F.2d 97, 98 (C.A. 9, 1952)] See also Sterno Sales Corporation v. United States, 345 F.2d 552 (Ct. C1. 1965). *274 It is true, as petitioners argue, that no written partnership agreement existed between the petitioners. However, in determining the existence of a partnership the courts are concerned with the substance of the transaction and have held on numerous occasions that the fact 15 that the parties failed to formally agree on partnership status is not conclusive. See Smith's Estate v. Commissioner, 313 F.2d 724 (C.A. 8, 1963), modifying 33 T.C. 465 (1959); and Ayrton Metal Company v. Commissioner, 299 F.2d 741 (C.A. 2, 1962), affirming in part 34 T.C. 464 (1960). Petitioners also may not rely on their argument that under state law the petitioners' relationship must be considered a tenancy in common. "[Their] status under local law would not be determinative, since the Internal Revenue Code prescribes its own standards for qualification of an unincorporated association as a partnership and supersedes local law." Hubert M. Luna, supra at 1077. Furthermore, the mere fact that Carson-Thomas deeded the property to the individual members of Roswell Road Properties does not, under Georgia law, preclude the property *275 from being partnership property. See Bloodworth v. Bloodworth, 226 Ga. 898, 178 S.E.2d 198 (1970). The petitioners find some authority for their position in Lulu L. Powell, T.C. Memo. 1967-32. There the petitioner and five siblings each inherited from their mother a one-sixth interest in 12 parcels of real property. The property was rented and partnership returns were filed to reflect the income and expenses from the properties. Relying on Estate of Edgar S. Appleby, supra, the Court held that there was insufficient business activity upon which to base a finding of partnership. Powell is clearly 16 distinguishable. In both Appleby, supra, and Powell, supra, petitioners inherited property which they then held for rental purposes. In Demirjian, supra at 1697, we noted that where the co-owners have inherited property and not indicated an intention to operate as partners, they generally have not been regarded as partners. In the present case we are not dealing with parties who have had the benefits and burdens of ownership thrust upon them by inheritance, but rather we are dealing with parties *276 who have intentionally liquidated an active corporation and then continued the business of that corporation using the same assets and methods of operation. Furthermore, the petitioners in the present case have gone one step further than the mere filing of partnership returns as in Powell. They have indicated their own belief that they were partners by unequivocal statements in their own personal income tax returns. Finally, the petitioners contend that even if Roswell Road Properties is found to be a partnership, each individual partner should be allowed to qualify for the benefits of section 1033, and the provisions of section 703(b) should not deprive the petitioners of the benefits of section 1033. This contention has been correctly rejected in Mihran Demirjian, supra at 1698-1701, and in answer to petitioners' contention we need only repeat what was said in that case. 17 By requiring elections affecting the income derived from a partnership to be made at the partnership level, section 703(b) is intended to avoid the inconsistent treatment of items of income by different members of a partnership. And, the election to replace involuntarily converted property *277 is the very kind of election which, if not made at the partnership level, would result in the confusing and inconsistent treatment of items of partnership income which the section was intended to proscribe. Thus, the partnership was the only "taxpayer" which could make an election under section 1033(a), and its failure to replace the property as required by section 1033(a) must therefore result in the recognition of the gain on the sale. [Mihran Demirjian, supra at 1700] Decisions will be entered under Rule 50. Footnotes
1. The cases of the following petitioners are consolidates herein: Mrs. J. L. (Ione J.) Varner, Docket No. 3426-71; and William B. Carson and Evelyn V. Carson, Docket No. 3427-71. ↩
2. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
3. SEC. 1033. INVOLUNTARY CONVERSIONS. (a) General Rule. - If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted - * * * (3) Conversion into Money Where Disposition Occurred after 1950. - Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph: (A) Nonrecognition of Gain. - If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. Such election shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe. * * * ↩
4. SEC. 761. TERMS DEFINED. (a) Partnership. - For purposes of this subtitle, the term "partnership" includes a syndicate, group, pool, joint venture or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title [subtitle], a corporation or a trust or estate. * * * ↩
5. SEC. 703. PARTNERSHIP COMPUTATIONS. (b) Elections of the Partnership. - Any election affecting the computation of taxable income derived from a partnership shall be made by the partnership, except that the election under section 901, relating to taxes of foreign countries and possessions of the United States, and any election under section 615 (relating to exploration expenditures) or under section 617 (relating to additional exploration expenditures in the case of domestic mining), shall be made by each partner separately. ↩
6. See Treas. Reg. 1.761-1: Mere coownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. * * * Compare the above language with the following language which appears in the same Treas. Reg.: Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits thereof. * * * ↩
7. While Commissioner v. Culbertson, 337 U.S. 733 (1949), was a family partnership case, it is recognized that "the general principles set out in * * * Culbertson apply to all partnership situations." Smith's Estate v. Commissioner, 313 F.2d 724, 729 (C.A. 8, 1963), modifying 33 T.C. 465↩ (1959).