T.C. Summary Opinion 2001-37


UNITED STATES TAX COURT


HUBERT AND FLORA M. SWARINGER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 282-00S.                      Filed March 22, 2001.


Hubert and Flora M. Swaringer, pro se.

<u>Keith L. Gorman</u>, for respondent.


POWELL, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' 1995 Federal income tax of $14,504 and a penalty under section 6662(a) for negligence of $2,901. After concessions,[2] the issues are (1) whether petitioner Hubert Swaringer (petitioner) had unreported income of $24,316; (2) whether petitioner is entitled to Schedule C deductions in amounts greater than those allowed by respondent; and (3) whether the negligence penalty is applicable. Petitioners resided in Philadelphia, Pennsylvania, at the time the petition was filed and during the year at issue.

The facts may be summarized as follows. Petitioner Flora M. Swaringer (Mrs. Swaringer) was employed as a secretary and was paid a salary of $44,271 in 1995. Petitioner was the pastor of the United House of Prayer for All People (the church) in New York, New York. The parties stipulated that petitioner was not an employee of the church and was self-employed. Petitioner was paid from the "offerings" of the congregation. On Schedule C, Profit or Loss From Business, relating to petitioner's ministry, petitioners reported $28,600 as income from the church. Neither petitioners nor the church maintained records of the "offerings". Respondent used a so-called bank deposits analysis to verify petitioners' income. That analysis showed the following:

---

[2]    Petitioners concede that they failed to report dividend income of $629. Respondent concedes that the unreported income should be reduced by $2,343 resulting from nontaxable bank transfers.

| | |
|---|---|
| Bank deposits | $94,013 |

Less:

| | |
|---|---|
| Mrs. Swaringer's deposits | $31,280 |
| Schedule C--Gross income | 28,600 |
| Bank loan | 4,000 |
| Reimbursement from the church | 5,817 |
| | 69,697 |

| | |
|---|---|
| Unexplained bank deposits | $24,316 |

Respondent's concession reduces the unexplained bank deposits amount by $2,343. Petitioner testified that, of the remaining unexplained bank deposits, $1,000 was a loan from one Robin Oliver and the remainder constituted nontaxable gifts from parishioners of the church. According to petitioner, on occasions such as his birthday, Father's Day, and Christmas, parishioners would give him money as gifts.

On Schedule C petitioners claimed deductions of $24,574 with regard to petitioner's activity as a minister. Of this amount, respondent disallowed $19,271. The following schedule shows the amounts claimed and disallowed:

| Expenses | Claimed | Allowed | Disallowed |
|---|---|---|---|
| Advertising | $79 | $79 | -0- |
| Automobile | 9,294 | 1,328 | $7,966 |
| Office | 125 | 125 | -0- |
| Repairs | 1,179 | 1,179 | -0- |
| Licenses | 443 | 443 | -0- |
| Travel | 2,100 | 649 | 1,451 |
| Meals | 1,560 | 500 | 1,060 |

| | | | |
|---|---|---|---|
| Utilities | 2,034 | -0- | 2,034 |
| Robes, etc. | 3,000 | 500 | 2,500 |
| Dry Cleaning | 1,900 | 500 | 1,400 |
| Tithes | 2,860 | -0- | [1]2,860 |

[1] In the notice of deficiency respondent allowed petitioners an additional $5,547 as charitable contributions on Schedule A, Itemized Deductions, which includes the amount petitioners claimed on Schedule C as tithes.

## Discussion

### A. Unreported Income

Initially, we note that it appears that the bank deposits analysis should be modified to reflect the dividend income ($629) that petitioners concede was not reported on their return. We also accept petitioner's testimony that the analysis should be modified to reflect the money borrowed ($1,000) from Robin Oliver.

With respect to the balance of the unexplained bank deposits, petitioners argue that these funds are nontaxable gifts from various unspecified members of the church. Section 102(a) provides that "Gross income does not include the value of property acquired by gift". Neither the Code nor the regulations define a gift for the purposes of section 102. In Commissioner v. Duberstein, 363 U.S. 278, 285-286 (1960), the Supreme Court summarized the case law regarding whether amounts received were gifts within the meaning of section 102 as follows:

> The mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty", or from "the

incentive of anticipated benefit" of an economic nature, it is not a gift.  And, conversely, "[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it."  A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," "out of affection, respect, admiration, charity or like impulses."  And in this regard, the most critical consideration * * * is the transferor's "intention."  * * *

* * * The donor's characterization of his action is not determinative--that there must be an objective inquiry as to whether what is called a gift amounts to it in reality.  It scarcely needs adding that the parties' expectations or hopes as to the tax treatment of their conduct * * * [has] nothing to do with the matter.

* * * The proper criterion * * * is one that inquires what the basic reason for * * * [the donor's] conduct was in fact--the dominant reason that explains his action in making the transfer. * * * [Fn. refs. and citations omitted.]

Petitioners have the burden of establishing that the amounts in dispute constituted nontaxable gifts.  See Rule 142(a).  The fundamental problem with petitioners' case is that we have no evidence as to the dominant reason for the transfers.  Instead, all we have is petitioner's characterization of the transfers as gifts, which in itself has little or no evidentiary value.

On the other hand, the evidence that we do have strongly suggests that the transfers were not gifts within the meaning of section 102(a).  The transfers arose out of petitioner's relationship with the members of his congregation presumably because they believed he was a good minister and they wanted to reward him.  Furthermore, petitioner testified that without the gifts his activity as a minister was essentially a money losing

activity.  In short, as petitioner recognized, the so-called gifts were a part of the compensation he received for being a minister.  As such, the transfers are not excludable from income under section 102(a).  See Goodwin v. United States, 67 F.3d 149 (8th Cir. 1995); Webber v. Commissioner, 219 F.2d 834 (10th Cir. 1955), affg. 21 T.C. 742 (1954); Banks v. Commissioner, T.C. Memo. 1991-641.

B. Schedule C Expenses

Section 162(a) allows deductions for ordinary and necessary expenses paid or incurred in carrying on any trade or business including travel expenses while away from home.  The taxpayer has the burden of establishing that such expenses were paid or incurred.  See Welch v. Helvering, 290 U.S. 111 (1933).  In addition, certain other provisions mandate that a taxpayer maintain specific records concerning certain types of expenses. See sec. 274.  With these principles in mind we turn to the expenses claimed and in dispute here.

1.  Automobile.--Petitioners claimed a deduction of $9,294 for automobile expenses.  Respondent disallowed $7,966 of that amount.  The deduction claimed was based on the number of miles allegedly driven in connection with petitioner's ministry. Section 274(d)(4) provides that no deduction shall be allowed with respect to "listed property" unless certain substantiation rules are met.  Listed property includes any passenger

automobile.  See sec. 280F(d)(4)(A)(i).  To meet these requirements petitioner must substantiate the amount of the business use and total use of the automobile, the time of the use of the automobile, and the business purpose for the use.  See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  Petitioner must maintain adequate records such as a log, diary, or trip sheet.  See sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Petitioner's records consist of a document prepared by his secretary after the end of the year that contains headings as to the date of travel, the place of travel, the general purpose of the travel, and the mileage.  There are, however, many problems with the information contained in that document.  It contains petitioner's transportation to and from his residence (Philadelphia) and his place of business (New York), which represents personal commuting and not deductible expenses.  See Holmes v. Commissioner, T.C. Memo. 1993-387.  It also contains a trip to Los Angeles, California, that petitioner admits was erroneous.  There are trips listed for which the stated mileage is obviously wrong.[3]  Furthermore, the reasons stated for the

---

[3]   The one-way mileage from Baltimore, Maryland, to Spartanburg, South Carolina, is approximately 525.  Petitioner's records indicate that the mileage is 1,135.  The records also indicate that the mileage from Philadelphia, Pennsylvania, to Miami, Florida, is 5,700.  The actual mileage is approximately 2,600.  It is clear that petitioner did not intend to list
(continued...)

travel lack any specificity.[4]  In short, we do not find that petitioner's records satisfy the requirements of section 274(d). We sustain respondent's determination as to the automobile expenses.

2.  <u>Travel and Meals</u>.--Petitioners claimed deductions of $2,100 and $1,560 for travel and meals, respectively.  Respondent allowed $649 and $500, respectively.  As to the travel, section 274(d) requires that travel expenses be substantiated by evidence establishing the amount of the expense, the business purpose for the travel, and the time and place of the travel.  Petitioners introduced no receipts or other evidence to show the amounts paid or the business purpose of the travel.  With respect to the meals, petitioner contends that he is entitled to use the so-called per diem substantiation.  See Rev. Proc. 94-77, 1994-2 C.B. 825.  But, to use the per diem method in lieu of strict substantiation, a taxpayer still must "[substantiate] the elements of time, place, and business purpose of the travel expenses in accordance with" the regulations under section 274(d).  Rev. Proc. 94-77, sec. 4.03, 1994-2 C.B. at 827; see <u>Reynolds v. Commissioner</u>, T.C. Memo. 2000-20.  As we have noted,

---

[3](...continued)
roundtrip mileage.

[4]    Petitioner's records state that the reason for many of the trips was to attend a "Conference" without any description of the nature of the conference.

petitioners have not satisfied this requirement. We sustain respondent's determinations.

3. Utilities.--Petitioners claimed a deduction of $2,034 for utilities which respondent disallowed in full. As we understand, the deduction claimed was for telephone expenses incurred on petitioners' home telephone. Petitioners have no records substantiating these expenditures as expenses incurred in petitioner's trade or business. They apparently did not keep the monthly telephone statements. Petitioners could have, but did not, obtain copies of statements from the telephone company. In addition, the cost of basic local telephone service with respect to the first telephone line is a personal expense and is not deductible. See sec. 262(b). We sustain respondent's disallowance of the deduction.

4. Robes and Dry Cleaning.--Petitioners claimed deductions of $4,900 for robes and dry cleaning. Respondent allowed $1,000 for these items. Petitioner claims that, because of the nature of his employment, he was required to wear business suits that he would not otherwise have worn. But, even if this were correct, the cost of clothing is only deductible if the clothing is of a type specifically required as a condition of employment and is not adaptable as ordinary clothing. This rule also applies to the maintenance of such clothing. See Pevsner v. Commissioner, 628 F.2d 467 (5th Cir. 1980); Kalms v. Commissioner, T.C. Memo.

1992-394.  There is no indication in the record that the amounts disallowed were for clothing that could not be worn in an ordinary way.  Respondent's determinations are sustained.

5.  <u>Negligence</u>.--Respondent determined that the omission from income of the so-called "gifts" and the deductions claimed on the Schedule C were due to negligence and that the penalty under section 6662(a) is applicable.  Section 6662(a) imposes a penalty with respect "to any portion of an underpayment of tax required to be shown on a return" in an amount "equal to 20 percent of the portion of the underpayment to which this section applies."  Section 6662 applies, inter alia, to underpayments attributable to negligence or disregard of rules or regulations.  See sec. 6662(b)(1).  "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  See sec. 1.6662-3(b)(1), Income Tax Regs.  Also, "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  <u>Freytag v. Commissioner</u>, 89 T.C. 849, 887 (1987) (quoting <u>Marcello v. Commissioner</u>, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), affd. 904 F.2d 1011 (5th Cir. 1990),

- 11 -

affd. on other grounds 501 U.S. 868 (1991).  The question then is whether petitioners' conduct meets the reasonably prudent person standard.  See id.

We do not believe that petitioners' conduct meets this standard.  The law surrounding the disputed items is not complex. With respect to the claimed deductions, petitioners were required to maintain records, which they failed to do.  Furthermore, there is no indication that petitioners sought the advice of a qualified tax advisor concerning any of the disputed items.  We sustain respondent's determination.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.